## ALBRO E. BISHOP

*v.*

## CHRISTIAN BUSSE *et al.*

| 69 | 403, |
|----|------|
| 21a | 586 |
| 21a | 588 |
| 25a | 475 |
| 69 | 403 |
| 30a | 335 |
| 69 | 403 |
| 38a | 39 |
| 69 | 403 |
| 55a | 345 |
| 69 | 403 |
| 72a | 139 |
| 69 | 403 |
| 76a | 629 |
| 76a | 660 |
| 69 | 403 |
| 82a | 237 |
| 69 | 403 |
| 97a | [4]330 |
| 97a | [1]639 |
| 69 | 403 |
| 110a | [1]584 |
| 69 | 403 |
| 115a | [1]273 |

1. NEW TRIAL—*on finding of the facts.* This court will be cautious in the exercise of the power conferred by statute to reverse a judgment on the ground that the finding of the jury is not supported by the testimony, for the reason that it is the province of the jury to pass upon and determine the weight of evidence and to find the facts, and because the jury and the court below have better opportunity of judging of the credibility of each witness' testimony, and the weight to be attached to it, by seeing the witnesses on the stand, and their appearance, and manner of testifying.

2. SAME—*finding not tested by the number of witnesses, alone, on each side.* The question whether a verdict should be sustained or set aside as to the finding of the facts, does not depend upon the number of witnesses testifying on each side upon the disputed points. The number of witnesses may be on one side while the decided weight of evidence may be on the other.

3. SAME—*rule at common law.* At common law the finding of the jury as to the facts was not subject to be reviewed in an appellate court, but the judge trying the case had the power to grant a new trial, if he believed the evidence did not sustain the finding. If the jury, from prejudice, passion or a misapprehension of the evidence, found a verdict manifestly against its weight, the judge could thus prevent injustice and wrong by submitting the cause to another jury.

4. CONTRACT—*may be changed by subsequent agreement.* The right to contract includes the right to modify, change or abrogate a pre-existing contract; therefore, any contract not under seal, whether in writing or verbal, may, by a subsequent verbal contract, be annulled or changed, and the last contract, if supported by a consideration, will bind the parties.

5. SAME—*consideration.* Where a party, employed under a special verbal contract to furnish materials and erect a building, finding himself unable to perform without great loss, owing to a rise in prices, informed his employer that he would not comply with the contract, and the employer directed him to go on and finish the work and he would pay him what was right for it: *Held*, that the new agreement was based upon a sufficient consideration, and valid. The mutual promises of the parties were sufficient to support the new agreement.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

Mr. B. W. ELLIS, and Mr. ROBERT HERVEY, for the appellant.

Mr. JOHN VAN ARMAN, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellees brought assumpsit to recover a balance claimed to be due from appellant for labor performed and materials furnished by appellees in the construction of a house for appellant. The declaration contains the common counts, to which the general issue and a plea of payment were filed. The cause was tried by the court, and a jury, who found the issues for plaintiffs, and assessed their damages at $8069.30, and after overruling a motion for a new trial, the court rendered judgment on the verdict, and plaintiff brings the case here on appeal.

A few days after the fire of the 9th of October, 1871, the parties met and entered into a verbal contract, by which appellees agreed to build a four-story brick house, about 80 feet front by 100 feet back. Appellees were to be paid $15 per thousand for the brick in the wall, $20 per cord for rubble stone laid, and 45 cents per foot for dimension stone. At the conclusion of the agreement the prices were written down, as a memorandum. The building was to be plain and substantial. As to these facts there appears to be little, if any, difference, and appellant claims that the work was done and the house completed under this contract. On the other hand, appellees claim that this contract was abrogated, and a new agreement entered into, under which the house was built.

On the trial, both of the appellees testified, that within a week after they had commenced work they severally saw appellant, at different times, and that they each informed him that they could not and would not go on under the contract, and must abandon it, when appellant told them to go

on and finish the job, and he would pay them what was right for it. This, appellant denies, and he called two other witnesses, who testified that whilst they were engaged in building the house—and one of them says as late as near Christmas—they heard one or the other of appellees admit that they were doing the work at the prices specified in the first agreement. The question was propounded directly to the jury, and in response to it they specifically found that the new contract had been made, as claimed by appellees, and it is urged that this finding is not sustained by the evidence.

The jury, under the law, have the exclusive right to pass upon and determine the weight of evidence, and to find the facts. At common law that finding was not subject to be reviewed in an appellate court. The judge trying the case was, however, entrusted with the power to grant a new trial if he believed that the evidence did not sustain the finding; that if the jury, from prejudice, passion, or a misapprehension of the evidence, found a verdict manifestly against its weight, the judge could thus prevent injustice and wrong by submitting the case to another jury. And this was supposed to afford the parties all needed protection. The judge trying the case had the same opportunity to see and hear the witnesses, and to estimate the character of their testimony, as the jury, hence there was a fitness in his being required to pass upon it on a motion for a new trial. But the appellate court neither sees nor hears the witnesses testify, and only sees the evidence on paper, where it all appears alike. The evidence of a witness whom no one, seeing and hearing testify on the stand, would believe, when his evidence is reduced to writing may appear as consistent and truthful as that of a witness of the most undoubted truth and integrity. From these considerations it is apparent that we should be cautious in the exercise of the power, conferred upon us by the statute, to reverse because the finding is not supported by the testimony.

In all such cases, the presumption is, that the jury have done their duty and found correctly; that the judge trying

the case, and being in a position to determine accurately whether the finding is right, and acting under the responsibility of his place, has determined correctly in overruling the motion for a new trial. These presumptions being in favor of the finding, we always feel reluctance in interfering. Nor can we adopt a rule that mere numbers of witnesses should determine the question. All know that there are some witnesses who testify consistently, yet there is that in their manner which impairs the force, if it does not wholly destroy their testimony. Of these things we can not judge, because we do not have the means. Whilst in this case the number seems to be with appellant, for aught we can know the decided weight of evidence may have appeared to the jury and the court manifestly with appellees.

The jury judge of the manner and appearance of witnesses on the stand, their surroundings, their interest, their prejudice and feelings manifested in the case, none of which do we see. We must, therefore, leave the question of credibility and the worth of evidence where the law has placed it, with the jury, and decline to disturb the finding in this case. The verdict does not appear to us clearly and palpably against the evidence.

It is urged that the court below erred in instructing the jury that "A verbal contract may be annulled, altered or modified by another verbal contract subsequently made between the parties." That a verbal contract may be thus abrogated or modified by the agreement of the parties as effectually as a written contract may be, by a subsequent writing, we apprehend there can be no doubt. If parties are able to contract, if there is a subject capable of being contracted for, if there is a sufficient consideration, and the parties do contract, although .verbally, whether it be to annul or to modify a verbal agreement, it is undeniably true that it must bind the parties. At the common law, strictly applied, parties could not abrogate or modify a contract under seal, except by an instrument of the same character. It was required to be

done by an instrument of at least equal dignity.  Contracts in writing not under seal and verbal agreements were called parol contracts, and placed on the same footing.  Verbal agreements were of as high a grade as writings not under seal, and were subject to release, abrogation or modification by an agreement, either verbal or written.  The parties in this case, then, had the power, by a subsequent verbal agreement, to annul or modify the first contract, and the jury have found by the special verdict that they did make the change.

Was there, then, a sufficient consideration to sustain the new contract?  We think there was.

In this case, brick had risen from $15 in the wall to $22 or $23, and labor and materials had also advanced in the same proportion.  And the evidence shows that if appellees had completed the building at the prices first agreed upon, they would have lost about $8000; that, on appellees failing to perform the contract, appellant could have recovered the damages occasioned by the breach.  But this he may have considered of less advantage to him than the completion of the building, and if so, that of itself would have been a sufficient consideration to support the new agreement.  It is held that one promise is sufficient to support another, and that where a party will derive a benefit from the performance of a contract, that is a consideration for a promise to pay for such benefit.

Again, the rise in the price of materials for building to so large an extent was, no doubt, according to the law of demand and supply, occasioned by a scarcity of buildings or a much larger demand than the supply, and if so, rents must have been enhanced to an extent equal to the rise in labor and materials.  And if this was true, we then could see a strong inducement to change the contract rather than not have the building erected.  If he had not agreed to the change, he was notified that appellees would not erect the building, and he would have been left to his legal remedy for the recovery of damages for the breach of the contract, and he would have

408 BISHOP *v.* BUSSE *et al.* [Sept. T.

.Opinion of the .Court.

been deprived of the profits derived from enhanced rents, if there were such. But whether there were such increased rents or not, the mutual promises formed a sufficient consideration to support the new contract. It, then, follows that there was no error in giving the two instructions of which complaint is made.

The view we have taken of the case places the rights of the parties on the new contract to proceed and finish the building, and appellant would pay what was right. And in this view the first instruction of appellant, which was refused, was not proper to be given. The second, of which complaint is made, announced that appellees, immediately on entering into the contract, should have purchased the brick, and not have waited for the rise. The evidence shows that the plan of the house was changed from a plain to an ornamental front, in which, by the original agreement, common bricks were to be used, but it was changed to pressed brick. Appellees could not know before the rise that it would have been changed so as to require pressed brick.

Again, under the new contract appellant was to pay what was right, and brick had then gone up, as we understand the evidence, and he must have intended to pay the increased price. It was but right that he should. The evidence, we think, clearly shows that the building first contemplated would not have required more than half the quantity of brick that were consumed in constructing the building that was completed, and even under the original contract they would, when the change was made, have been entitled to the price they paid for the additional quantity. But it was no more than right and just that appellees should, under the new arrangement, have the cost of the material used in the building, and the instruction asked, announcing the opposite rule, was properly refused.

It is also urged that the jury found too large a sum. After a careful consideration of the evidence, we are of opinion that had the verdict been much larger we could not have

disturbed it for that reason. The verdict is more than $1000 less than witnesses swore the labor and materials were worth. From this we infer that the jury made deductions on various parts of the work.

After a careful examination of the case, we perceive no error requiring the reversal of the judgment, and it is affirmed.

*Judgment affirmed.*

69 409
54a 95

69 409
69a 560

69 409
73a 264

69 409
90a [1]395

69 409
97a [1]138