## THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

### v.

### JAMES SULLIVAN.

*Railroads—Action for Damages for Personal Injuries Sustained by Passenger in a Collision—Pleadings—Variance—Evidence—Recovery of $5,000, not Excessive—New Trial—Newly Discovered Evidence.*

1. In an action to recover damages for personal injuries suffered by the plaintiff in a collision while a passenger on the road of the defendant company, it is *held:* That there was no variance between the declaration and the testimony; that proof of the breaking down of the plaintiff's nervous system and that his nerve trouble might result in death, was properly admitted; that the rules of pleading did not require the plaintiff to set out in his declaration the evidence relied upon; that the evidence sustains the verdict for the plaintiff; that this court will not interfere with the verdict, the credibility of the witnesses and weight of the evidence being questions for the jury; that the verdict for $5,000 is not excessive; that the court below properly refused to grant a new trial on the ground of newly discovered evidence.

2. Newly discovered evidence, which could have been procured by due diligence, or which is merely cumulative, unless decisive in character, is insufficient as ground for a new trial.

C., B. & Q. R. R. Co. v. Sullivan.

[Opinion filed December 11, 1886.]

Appeal from the Circuit Court of La Salle County; the Hon. George W. Stipp, Judge, presiding.

Messrs. Samuel Richolson, O. F. Price, and Richolson & Gentleman, for appellant.

There is a fatal variance between the allegations and the proofs.

" The primary object of a special count in a declaration is to apprise the defendant of the true ground upon which the plaintiff claims to recover and give him notice of what he will be called upon to meet upon the trial." R. R. Co. v. Wilcox, 12 Ill. App. 47; T., W. & W. R. R. Co. v. Briggs, 85 Ill. 80; City of Bloomington v. Goodrich, 88 Ill. 558; Gavin v. Chicago, 97 Ill. 66; T., W. & W. R'y Co. v. Jones, 76 Ill. 311.

The verdict of the jury was contrary to the weight of the evidence.

Messrs. Duncan & O'Conor, for appellee.

The evidence fully warrants the finding of the jury. They had before them, *first*, undisputed evidence of good health prior to the accident; *second*, a concurrence of evidence produced by both parties demonstrating beyond doubt that plaintiff's health is irreparably ruined; *third*, the absence of any cause for his ill-health aside from his injury in the accident; *fourth*, the opinion of the plaintiff's experts that his condition is due to shock received in the accident; *fifth*, the opinion of defendant's experts that plaintiff's condition is due to rheumatism of the heart, coupled with the admission that the rheumatism might have resulted from the shock.

A defendant can not be permitted to allege in mitigation of damages that the injury was more aggravated by reason of the plaintiff's previous unhealthy condition. Field on Damages, Sec. 613; Ehrgott v. Mayor, 96 N. Y. 264 (48 Am. R. 622); McNamara v. Village of Clintonville, 62 Wis. 207 (51 Am. R. 722).

Newly discovered evidence to warrant a court in granting

a new trial, must be decisive in its character and not merely cumulative. Smith v. Shultz, 1 Scam. 490; Martin v. Ehrenfels, 24 Ill. 187 ; Calhoun v. O'Neil, 53 Ill. 537 ; T., W. & W. R'y Co. v. Seitz, 53 Ill. 452 ; Holmes v. Stateler, 57 Ill. 209; Fuller v. Little, 69 Ill. 229 ; Tallman v. Becker, 85 Ill. 183 ; T., W. & W. R'y Co. v. Ingram, 85 Ill. 172.

Newly discovered evidence, to warrant a new trial, must go to the issues tried by the jury and not merely to mitigate the damages. Schlencker v. Risley, 3 Scam. 486 ; Lafflin v. Herrington, 17 Ill. 399 ; Calhoun v. O'Neal, 53 Ill. 354; Crozier v. Cooper, 14 Ill. 139.

Before a new trial will be granted on account of newly discovered evidence, it must appear that it could not have been discovered before the trial by the exercise of due diligence. Crozier v. Cooper, 14 Ill. 139 ; Lafflin v. Herrington, 17 Ill. 399 ; Wright v. Gould, 73 Ill. 56 ; Edgmon v. Ashelby, 76 Ill. 161; Champion v. Ulmer, 70 Ill. 322; Bruce v. Truett, 4 Scam. 454.

WELCH, J. On the 16th day of November, 1883, the appellee was a passenger on the train of the appellant from Ottawa to Streator. When near Streator a freight train of the appellant ran into the rear of the coach in which appellee was seated. Appellee avers in his declaration that the appellant by its servants negligently allowed said car in which the appellee was, to be run into and telescoped by another locomotive engine and cars operated by the appellant, by means whereof said car was wrecked, and the appellee with great force and violence was crushed, shocked, bruised, lamed, forcibly hurled forward in said car and jammed between the seats thereof, and in divers other ways abused and injured; by means whereof one of his legs was seriously crushed and bruised; one of his hips and his side above said hip permanently injured; one of his hands cut and disabled; his head cut and gashed, and he was otherwise greatly injured, bruised, hurt, wounded, lamed and disabled. The trial resulted in a verdict and judgment for the appellee for $5,000, from which this appeal is taken. Various errors are assigned. We shall examine the errors in the order in which they are presented in appellant's brief.

" There is a fatal variance between the declaration and testimony." It is claimed by counsel for appellant that under the allegation that he " was crushed, shocked, bruised, lamed and in divers other ways abused and injured, by means whereof * * * he became and was sick, lame and disordered and so remained for a long time, to wit, hitherto. No proof of the breaking down of the nervous system of the appellee, or proof that his nerve trouble might result in his death was competent," and we are referred to Ayers v. Chicago, 111 Ill. 411; C., B. & Q. R. R. Co. v. Wilcox, 12 Ill. App. 47. The variance in the cases *supra* consisted in a difference between the statements of the declaration and the proofs as to how the injury occurred. In other words, as to the mode of its infliction and not as to its extent or character. In the case of the Eagle Packet Co. v. Defuis, 94 Ill. 603, Justice Dickey said : " It is insisted that, as the declaration did not allege plaintiff had suffered a permanent injury, it was error to give the third and seventh instructions, which authorize the jury to award the plaintiff damages for such permanent injury as the evidence showed he had sustained. This position is untenable. The declaration expressly alleges that the plaintiff " then and there became sick, lamed and disordered and so remained for a long time, to wit, hitherto, etc. The permanency of plaintiff's injury was merely evidence to be considered by the jury in determining the severity of the plaintiff's sickness, lameness, and disorder, and the rules of pleading do not require the plaintiff to set forth in his declaration the evidence upon which he relies." The position taken by the counsel for appellant as to what evidence was competent under this declaration and that there was a variance between the *allegata et probata*, is not well taken. Under the authority in 94 Ill. 603 *supra*, evidence of the breaking down of appellee's nervous system and that it might result in his death was competent.

It is next insisted by counsel for appellant, " that the verdict of the jury was contrary to the weight of the evidence." It was admitted on the trial that the injury was occasioned through the negligence of appellant. It being conceded that the injury to the appellee was the result of the negligence of

appellant, the only question involved is, as to the extent to which the appellee suffered injury from the acts of appellant. In order to accurately determine the scope and extent of the injury, we must consider the physical condition of appellee at the time of and prior to the injury, his physical condition since, and to what extent is his present condition attributable to the injury. The evidence shows that he was a healthy, stout, active and sturdy farm hand at the time of the injury; was between twenty-seven and twenty-eight years of age. His condition after the injury as described by himself was: "After I got out through the window I was cut, bleeding and bruised. I was cut on the head, back of the ear and on the hand; and bruised on the head, knee and side. * * * When I got home that evening I was in a bad condition, and the next morning I was in a worse condition. * * * My head and side were very sore and painful, especially my right side. * * * From that time on the pain has continued ever since. * * * Since the injury my health is and has been very poor. I am not able and have not been able since the injury to perform any manual labor; since then my ability to sleep is poor, very flighty, very restless; and my appetite since then is very poor." He was sustained as to his physical inability to do labor, etc., by Miller, Lawless, Forristol, Schener and Sullivan. To what extent is his present condition attributable to the injury? The evidence on this question is conflicting. The evidence for the appellee tended to show that his present condition is attributable to the injury. Dr. Dyer testifies: "I have been a physician for thirty years; three years an army surgeon and three years pension examiner. Have had special experience in nervous diseases and nerve injuries resulting from shocks and bruises. Never saw appellee until yesterday. I analyzed his urine this morning. The condition of his urine showed evidences of injury to his spine very markedly present. I found his pulse a little while ago beating at the rate of 131 per minute. The normal condition of the pulse is from sixty to eighty. The pulse at the rate I found it indicates a very bad condition. * * * When the nerves that supply the heart do not stimulate it to action, the

consequence is we have a very rapid, quick action of the heart. I have observed the color of his face. It is the result of the rapid action of the heart. * * * Appellee is a totally disabled man. It is impossible for a man with a pulse at 130 to do manual labor. * * * It leads to other organic disturbances and breaking down of the system. In the ordinary course the results will be disastrous to him." His opinion as an expert was, that the present condition of the appellee was attributable to the injury received at the time of the accident.

Dr. Hathaway testifies: "Have been a physician and surgeon in Ottawa since 1856. Have had experience in examining patients suffering from effects of shocks. Did not know plaintiff before the accident. In the winter of 1883 and 1884, or spring of 1884, I met him at my office in Ottawa. Have made four or five examinations of him in my office; and perhaps six or eight casual examinations outside of the regular examinations. Upon each and all of these times I examined his heart's action as indicated by his pulse. Have made such tests by pulsation and auscultation. When I first examined him I found in the right iliac region on a line running from the navel to the anterior superior spinous process, a swelling; a line so run would bisect the region of the swelling. I then, at such first examination, found the pulse ranging from 115 and 120, and the heart's action weak and rapid. The swelling was from three to four inches in diameter. I undressed and laid him on a bed. While lying down his pulse beat 115, and sitting up 120. I saw him a couple of months afterward and found him in same condition and the swelling the same. In a couple of months I examined him again in my office, and my last examination in my office was about two months ago. Normal condition of pulse is from sixty to eighty. His heart's action is enfeebled and indicates sickness of the nervous system and leads to inability to work; may produce disordered digestion, or disordered condition of the liver or kidneys, or organic or functional diseases of any of the organs, brain as well as otherwise. He is not capable of either mental or physical exercise to any considerable extent. Generally speaking the outlook would be that it would be very ques-

tionable whether he would ever recover. In the ordinary course of things the outcome would be unfavorable. The color of his face is not normal; it is produced by the rapid action of the heart. Was present at the analysis of his urine this morning, which showed a nerve trouble. The heart's rapid action breaks down the nerve tissues and produces the undue amount of phosphate deposit in the urine which was found." His opinion was that his present condition was attributable to the injury received at the time of the accident.

Dr. Wood testifies for the appellant that the appellee could not be in a state of nervous prostration, and be as well nourished as he was. * * * He would fall away for want of nourishment. Dr. Hard testifies for the appellant that he had examined the appellee and found him well nourished; his muscles were well developed and the feeling very hard and very natural; he was fully nourished. He examined the appellee's heart and gave his opinion that his affection was chronic rheumatism of the heart or pericardium. * * * "If appellee had been suffering from nervous prostration for two years he would now be a physical wreck. * * * I think a shock to the nervous system could not keep up a high rate of pulse for any constant period without some serious results; could not be kept up for a period of a year." Dr. Weis and Dr. McArthur corroborate Dr. Hard. Dr. McArthur testifies further, "Plaintiff's condition is far from being healthy. A young man of the age of twenty-seven years, fully developed, robust and sturdy, never having been sick, with perfect constitution, if he were affected with a nervous complaint, would be able to hold out against it much longer than a weaker or less sturdy subject. I should judge, having seen his body bare, that he now weighs 160 pounds, and if he weighed 185 pounds in 1883, he has wasted twenty-five pounds in the past two years." This was the evidence as to his present condition and the cause of it. The jury by their verdict found that his present condition was attributable to the injuries received in the accident. And as said by Justice Walker in Bishop v. Buesee et al., 69 Ill. 403, the jury under

C., B. & Q. R. R. Co. v. Sullivan.

the law have the exclusive right to pass upon and determine the weight of evidence, and to find the facts. * * * In all such cases the presumption is that the jury have done their duty and found correctly ; that the Judge trying the case and being in a position to determine accurately whether the finding is right, and acting under the responsibility of his place, has determined correctly in overruling the motion for a new trial. These presumptions being in favor of the finding, we always feel a reluctance in interfering ; nor can we adopt a rule that mere numbers of witnesses should determine the question. * * * The jury judge of the manner and appearance of witnesses on the stand, their surroundings, their interest, their prejudice and feelings manifested in the case, none of which do we see. We must therefore leave the question of credibility and the worth of evidence where the law has placed it, with the jury." C., B. & Q. R. R. Co. v Lee, Adm'x, 87 Ill. 457.

3. It is further insisted by counsel for appellant that the damages are excessive. In view of what we have said, if his present condition is attributable to his injuries, which the jury by their verdict have found, we can not say that the damages are excessive.

It is further insisted that the court erred in not granting a new trial on the ground of newly discovered evidence. The newly discovered evidence to warrant a court in granting a new trial must be decisive in its character, and not merely cumulative. Smith v. Shultz, 1 Scam. 490 ; Morrison v. Stewart, 24 Ill. 24 ; T., W. & W. R. R. Co. v. Seitz, 53 Ill. 452 ; Laird v. Warren, 92 Ill. 204; McCollom v. Indianapolis & St. Louis R. R. Co., 94 Ill. 534 ; Abrahms v. Weiller, 87 Ill. 179; Schoenfeld v. Brown, 78 Ill. 487 ; McKenzie v. Remington, 79 Ill. 388. There must also have been due diligence to procure and inability to obtain the newly discovered evidence of this decisive character. Wood v. Echternach, 65 Ill. 149 ; Crozier v. Cooper, 14 Ill. 141 ; Wright v. Gould, 73 Ill. 56 ; Edgmon v. Ashelby, 76 Ill. 161. Applying the rules laid down in the cases *supra*, to the newly discovered evidence in this case, we find that it is wholly insufficient to justify

the granting a new trial. It is purely cumulative, tending simply to show that the appellee's ill-health might be attributed in part to nocturnal emission produced by self-abuse. It was not decisive in its character. It only goes to the measure of damages, and is not conclusive as to the amount. We hold that by the exercise of due diligence it might have been dis- covered. We adopt in this case the language used by Justice Walker in 69 Ill. *supra:* "We decline to disturb the finding in this case ; the verdict does not appear to us clearly and palpably against the evidence."

We find no error in the ruling of the court in the admission of evidence, or in the instructions given. Substantial justice has been done.

*Judgment affirmed.*