Board of Education of Villa Grove Township High
School District No. 231, Champaign and Douglas
Counties, Illinois, et al., Appellants, v. James
Franklin Barracks et al., Appellees.

Gen. No. 7,731.

1. SCHOOLS AND EDUCATION—*jurisdiction of equity to restrain unlawful payment of school funds.* When school officers have issued unauthorized orders upon school funds equity will take jurisdiction, before payment is made thereon, and restrain the officers from making payment.

2. CONTRACTS—*necessity of reciprocal consideration for new contract modifying or replacing old one.* The consideration required to support a new agreement by the parties to an old one by which they modify or replace the former contract must be reciprocal.

3. CONTRACTS—*agreement of contractor to complete contract after threatened abandonment as consideration for new contract.* Where one who had contracted with the board of education to erect a school building, giving a bond for completion of the contract, threatened to abandon the work because of the increased cost of work and materials due to war conditions, his agreement to go on with the building if the board would pay him for the additional expenditure did not furnish a legal consideration for the new contract for further compensation, the completion of the building on the original terms being enforceable under the contractor's bond.

4. INJUNCTIONS—*when equity will retain jurisdiction of tax payers' suit to restrain illegal diversion of school funds.* In a suit to enjoin the payment of orders issued by school officers without authority, though it appears that one of the orders had been paid and that the funds had passed out of the hands of the treasurer, equity, having taken jurisdiction, will retain it and adjust the entire controversy.

5. SCHOOLS AND EDUCATION—*invalidity of contract entered into at informal conference of school board.* Under the provisions of paragraph 119 of the School Law, Cahill's Ill. St. 1921, ch. 122, that no official business shall be transacted by the school board except at a regular or special meeting, and of paragraph 120, that on all questions involving the expenditure of money the yeas and nays shall be taken and entered on the records, an agreement made at an informal conference of which no minutes were kept, between a majority of the members of the board and one who had contracted to erect a school building, that if the contractor would complete the contract, which he threatened to abandon, they would reimburse

him for increased cost of labor and materials, was not binding upon the district.

Appeal by plaintiffs from the Circuit Court of Douglas county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the April term, 1924. Affirmed. Opinon filed October 22, 1924.

WILLIAM G. SPURGIN, for appellants; WILLIAM R. MOSS and SAMUEL J. NORDORF, of counsel.

S. S. DU HAMEL, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

James Franklin Barracks, an owner of land and a taxpayer of Villa Grove Township, Illinois, on behalf of himself and other taxpayers, filed his bill of complaint in this cause on the 15th day of February, 1922, against the Board of Education of Villa Grove Township High School District, Illinois, the Township School Treasurer and F. J. Schwartz, a contractor, seeking to enjoin and restrain the Board of Education and the said Township School Treasurer from paying certain vouchers issued to said contractor for additional costs alleged to be due in the construction of a high school building.

An injunction writ was granted.

The bill alleged inter alia that the school district was duly organized, and that a Board of Education was duly elected; that the said Board of Education was legally authorized to erect the school building, and that the said board duly advertised for bids, and that on or about the 15th day of June, 1919, the said Board of Education awarded to F. J. Schwartz a contract to build the school building for said district for the sum of $88,500, according to the plans and specifications theretofore adopted by the said board. The said F. J. Schwartz entered into a bond or undertaking with approved sureties conditioned for the faith-

ful erection of said building; that the said F. J. Schwartz promptly began the erection and construction of said building and proceeded in every way in accordance with the plans and specifications of said contract, and continued so to construct said building until its completion.

The bill further alleges that on, to wit, the 14th day of April, 1921, the said F. J. Schwartz presented to the Board of Education a verified statement, in writing, showing a balance due for labor and materials furnished upon the said building in the sum of $24,500; that the said board, in meeting duly convened, on or about April 14, 1921, approved of the said statement, and by resolution duly passed, directed the sum of $24,500 to be paid to said contractor; that the said sum of $24,500 is over and above the sum of $88,500, for which the said F. J. Schwartz originally undertook to erect the said school building; that warrants were issued to the said F. J. Schwartz for the payment of this amount, and were then and there delivered to the said F. J. Schwartz; that the first voucher issued, for $7,500, was duly paid upon presentation by F. J. Schwartz, and the bill prays for a permanent injunction to prevent the payment of the remaining vouchers out of the funds belonging to said school district, and that the court decree that the said board had no right either in law or equity to authorize the payment of said sum, or any part thereof, and that the said F. J. Schwartz may be compelled to return the said sum of money received by him in payment of the first voucher.

The members of the Board of Education, the School Treasurer, and F. J. Schwartz, the contractor, appeared and filed their joint and several general and special demurrer, calling in question the jurisdiction of the court to entertain the bill, which was overruled, and the defendants thereafter, by leave of court, filed their joint and several answer, in which they admit-

ted that the school district was duly organized; that it proceeded legally to elect the Board of Education, and that it was legally authorized to erect a school building; that said district duly advertised for bids for the erection of a school building, and that the said board awarded the contract for the construction of said building to F. J. Schwartz, who was the lowest bidder, for the sum of $88,500.

The answer also admitted the making of the contract between said Schwartz and the board for the erection of said building, and that the said Schwartz had filed his bond conditioned in pursuance of said contract.

The answer further alleges that subsequently a parol agreement to pay additional compensation for the erection of said school building was entered into between the parties and later a further compromise agreement was made after the completion of the building in full settlement of all claims.

The answer further alleges substantially that owing to increase in prices of labor and material brought about by war conditions, the said defendant F. J. Schwartz presented to the various members of the Board of Education the matter of the additional cost of the construction of the school building, and that he had decided to abandon the completion of the structure, in view of the fact that his funds were depleted and a heavy loss was in prospect for him; that the board held an informal meeting on August 15, 1920, and advised the contractor Schwartz to continue the erection of said building, and that they, the board, would pay the additional cost, and that he, the said Schwartz, should bring in a statement showing all costs when the building was completed. That on April 13, 1921, the said defendant Schwartz submitted a verified statement to the board, showing the actual cost of the construction of the school building to be $122,000 or $33,500 in excess of the contract price,

and that as a result of negotiations the board then and there agreed to pay him the sum of $24,500 in full settlement, the basis of such computation being that this additional payment would increase his original contract price to that of the next lowest bidder.

There was replication and the cause was submitted to the master to take and report the proofs, with his conclusions of law and fact.

The master took the proofs and reported same with his finding that the payment of said warrant for $7,500 to the defendant F. J. Schwartz was unlawful, and recommended that a decree be entered in accordance with the prayer of the bill, awarding a perpetual injunction against the school board and its treasurer, enjoining and restraining the payment of any further sum of money to said F. J. Schwartz, and directing that the said F. J. Schwartz make restitution for the warrant, amounting to $7,500, paid to him, and that in default thereof that the members of the school board be severally held liable therefor. Objections were interposed before the master and overruled, and exceptions filed thereto in the circuit court, which were overruled, and a decree was entered.

It appears from the proofs that bids for the construction of said building were opened on June 5, 1919, and that Schwartz was the lowest bidder and $24,500 under the next lowest bid.

It further appears that thereafter Schwartz was questioned by the Board of Education and architect as to whether the work could be done for the amount of the bid, and Schwartz and the architect, having completely refigured the plans and specifications, came to the conclusion that the work could be done and material furnished and a contract was entered into on June 10, 1919, and a good and sufficient bond with sureties was signed by Schwartz, the contractor, under seal, covenanting that all of the terms of the contract would be fully carried out by the contractor.

It further appears that thereafter Schwartz entered upon the work of constructing said building under the contract in good faith, and that in December, 1919, owing to conditions brought about by the World War, he became unable to obtain material for the construction of said building, except at greatly enhanced prices. Dealers and manufacturers with whom he had contracted canceled his orders, and he was compelled to obtain materials from other sources at much higher prices, and he also encountered difficulties in hiring and keeping labor steadily on the building on account of the repeated demands for increase in wages, over and above the prices they agreed to work for when the work was commenced.

It appears that on February 17, 1920, the Board of Education, at a regular meeting, adopted a resolution "to approve and pay additional expense on brick work on high school building from December 1, 1919, on account of the increased price of labor and threatened strikes"; and it further appears by the record of the Board of Education that on May 8, 1920, it allowed and paid to the contractor Schwartz the sum of $2,263 "for the extras furnished by him to date, not covered by the general contract, as per statement hereto attached."

It further appears that thereafter matters reached a point where Schwartz felt he could not go further without suffering great financial loss and that he sought out the various members of the board and told them in substance that owing to the advance in price of labor and materials it would be impossible for him to continue on the building without great loss, and stated he would cease work on the building until conditions with respect to labor and materials became more nearly normal; and it appears that Schwartz, in his talks with the various members of the board, was advised by more than a majority of them that if he would proceed with the construction

of the building the board would protect him against loss.

It had been agreed in the contract that the work and building should be substantially completed on or before March 10, 1920. The members of the board felt and stated that they deemed it necessary that the construction of the building be completed, as it was needed for a school.

There is a great deal of testimony in the record about a conference in the month of August, 1920, at the city hall in Villa Grove about the matter. Schwartz, the contractor, and a majority of the Board of Education were present. The architect and W. A. Erwin, president of the board, were present. J. P. Morrison, secretary of the board, was present, but there appear to have been no minutes kept of the meeting. In fact, it is not claimed that this was a stated, regular or special meeting of the Board of Education of the district. The most that is claimed by appellants as to this meeting is that nearly all the members of the board were present and that more than a majority of the members assured Schwartz that if he would borrow the money and go ahead and complete the work in a substantial manner, and keep an itemized account of all of his expenditures and bring the same in after the work was completed, they would protect him from loss on the contract, and that without this assurance Schwartz would have abandoned the work.

Schwartz continued on the construction and completed the work, and in April, 1921, submitted an itemized list and account of the expenditures incurred on the entire construction, amounting to $122,000, the same being $33,500 in excess of the amount provided in said contract.

On April 13, 1921, at a regular meeting of the Board of Education, the matter was settled by the allowance to Schwartz of the sum of $24,500, making the cost of the building the amount of the second lowest bid, and

for this amount the orders in question were issued, and Schwartz, with sureties, gave to the members of the Board of Education an indemnity bond to fully protect and save them harmless by reason of making such settlement, and the issuing of said orders for $24,500.

Appellants contend that where school authorities squander funds or appropriate them to unauthorized purposes, there is a complete remedy at law and that a court of equity has no jurisdiction to interfere. Citing *Moore v. Fessenbeck*, 88 Ill. 422; *Wahl v. School Directors*, 78 Ill. App. 403 and Cahill's Ill. St. 1921, ch. 122, ¶ 388.

The statute referred to merely makes school officers liable to a civil action for all losses sustained, and it may be the law, as held in the cases cited where the funds have been squandered and lost, and there remains no method to reach the fund, that there is an adequate remedy at law. But the issuing of orders upon the fund, before the payment of the same, presents a different case entirely and the authority is ample that equity will take jurisdiction. *Adams v. Brenan*, 177 Ill. 194; *City of Chicago v. Nichols*, 177 Ill. 97; *Lindblad v. Board of Education*, 221 Ill. 274, and *Fergus v. Russel*, 270 Ill. 304. It was held in *Lindblad v. Board of Education, supra:*

"It follows, therefore, that the contract by which the public school board employed each of the critic teachers for the purposes aforesaid is illegal and void, and that the payment of those teachers out of the funds of the public school is an unlawful diversion of the public money. Such an unlawful contract is an injury to the taxpayer, and he may have an injunction to prevent the appropriation of the school fund to this purpose, which is not warranted by the law. *Adams v. Brenan*, 177 Ill. 194; *City of Chicago v. Nichols*, 177 Ill. 97."

Equity will protect the interest of the taxpayer, in the fund in which he is beneficially interested, in the

hands of a trustee. In this case, one of the orders for $7,500 has been paid and the funds passed out of the hands of the treasurer, but equity, having taken jurisdiction for one purpose, will retain jurisdiction and adjust the entire controversy.

Appellants contend in this case that the promise of the members of the Board of Education to save the contractor from loss and thus modify the terms of the contract is based upon a valid and sufficient consideration in the promise of the contractor to fulfil the contract and complete the building at an early date, and appellants first contend that the right to terminate a contract, subject to civil liability for damages, in case of breach, is a right protected by the guaranties of property in the State and federal constitutions, citing *Gillespie v. People,* 188 Ill. 176, and *Josma v. Western Steel Car & Foundry Co.,* 249 Ill. 508. Just what connection there is between the decisions in these cases and the consideration for a contract we are not able to determine. The first is based upon an information containing a criminal charge, and the *Jasma* case involves the constitutionality of an act placing unequal limitations upon the employment of labor. Neither case, in any manner, discusses the consideration of a contract. It is true that any party to a contract, under the bill of rights, may terminate the contract and respond in damages. If it is to be argued from this that a party to a contract may secure one consideration for entering into a contract and another consideration for not terminating it, generally in all cases, we do not accede to the doctrine.

Appellants further contend that: "A party to a contract has the right to elect whether he will perform the contract or abandon it and pay damages, and the giving up of his right of election furnishes a consideration for a new promise." Citing *Bishop v. Busse,* 69 Ill. 403 and *Cooke v. Murphy,* 70 Ill. 96.

In *Bishop v. Busse, supra,* the court held:

"That, on appellees failing to perform the contract, appellant could have recovered the damages occasioned by the breach. But this he may have considered of less advantage to him than the completion of the building, and, if so, that of itself would have been a sufficient consideration to support the new agreement. It is held that one promise is sufficient to support another, and that where a party will derive a benefit from the performance of a contract, that is a consideration for a promise to pay for such benefit."

In *Cooke v. Murphy, supra,* it was held:

"The rule is familiar, that one promise is a sufficient consideration to support another, and that where a person does any act beneficial to another, or agrees to do so, that forms a sufficient consideration to support an agreement. Here were mutual promises, one to perform labor, and to furnish materials, and the other to pay for them. Again, the performance of the labor and the furnishing materials were of benefit to appellant, and of loss and injury to appellees, and the new and additional contract was binding. Appellees refused to go on with and to perform the contract, and he agreed, if they would, he would pay them the additional sum."

These cases do not support the doctrine that a party to a contract may in any and every case terminate the contract and enter into a new and modified agreement for an added consideration but that they may do so only in those cases where some benefit or advantage is to accrue to the other party, by reason of such modification of the agreement. The benefit or advantage to the other party is not to be presumed in every case. The true rule is that, "the consideration required to support a new agreement by the parties to an old one, by which they modify, in one or more particulars, their former contract or replace it with a substitute, must be reciprocal. Each party must gain something by the change. If the benefit is unilateral, a consideration is lacking, for it is widely recognized

and a well-established legal principle that doing or undertaking to do only that which one is already under a legal obligation to do by his contract is no consideration for another's agreement." *Russell v. Lambert,* 14 Idaho 284, L. R. A. 1915 B 37; *McKinley v. Watkins,* 13 Ill. 140; *Barnett v. Barnes,* 73 Ill. 216; *Loach v. Farnum,* 90 Ill. 368; *Goldsborough v. Gable,* 140 Ill. 269.

It is true that in the case at bar, after the making of said contract, there had been a raise in the cost of material and labor to complete said construction, and the contractor, Schwartz, was losing money on his contract, but this situation arises in all departments of business and at most unseasonable times. In fact, it is of such frequency that it is the custom to require contractors to give bonds, with sureties, for the faithful and complete carrying out of such contracts and such a bond was given in this case.

In the case at bar, we fail to see of what benefit or advantage it was to the Board of Education of this school district to secure the services of Schwartz to complete the contract at an expense of $24,500, when, so far as this record shows, the contract could have been completed by the board itself within the same period of time at no expense whatever above the amount of Schwartz's original contract. We mean by this, that if Schwartz had abandoned the work, or terminated the contract, it was within the power of the Board of Education to secure another contractor or other workmen, or, in their own way, employ assistance and complete the construction of the building, and the added necessary expense thereof could and should have been recovered upon Schwartz's bond. That is what the bond was given for, and if it was not available in this case it is purposeless to require such bonds. Other contractors bid upon this work, and this record is bare of any showing that appellant Schwartz was necessary to the completion of

the contract, or that there was not an ample supply of material and labor in the market, ready and willing to complete the work, upon appellants' request, at the market price of such material and labor, and the extra cost and expense thereof, above the sum of $88,500, all chargeable to and subject to recoupment from appellant Schwartz's bond.

. The court below found that there was no consideration for the modification of the contract by which appellants were paid an extra $24,500 for the completion of this contract, and from the record, if that were the only question in the case, we should not be disposed to disturb the finding. However, there are added reasons why the decree of the lower court should not be reversed. The original contract and the indemnity bond cover the same subject-matter and are to be construed together as one instrument. The bond was in the possession of and the property of said school district at all times after June 10, 1919, and at the time said orders were issued. The bond is under seal and cannot be changed, modified or abrogated by parol agreement or even by a written instrument, not under seal. *Barnett v. Barnes*, 73 Ill. 216; *Loach v. Farnum*, 90 Ill. 368; *Ryan v. Cooke*, 172 Ill. 302; *Jackson v. Security Mut. Life Ins. Co.*, 233 Ill. 161; *Becker v. Becker*, 250 Ill. 124; *Hiett v. Turner-Hudnut Co.*, 182 Ill. App. 524, so that whatever construction may be placed upon the conduct of the parties to this suit in other respects, nothing that took place had the effect of releasing appellant Schwartz or his sureties from the obligations of said bond.

Appellants in this case place reliance upon what took place in August, 1920, at the Villa Grove Town House, with the various members of the Board of Education, to constitute a modification of said contract. It is not claimed that this was at a regular or special meeting of said board and appellants cite *Lawrence v. Traner*, 136 Ill. 474, in construing paragraph 119,

ch. 122, Cahill's Ill. St. 1921; that this provision does not preclude the holding of special meetings not called in the manner therein stated, but that the directors may, without such call, meet and hold special meetings for the transaction of business, and appellants cite *Jackson Co. School Directors v. Kimmel*, 31 Ill. App. 537, as authority that in certain cases the official acts performed by such boards may be proven by parol.

The authority of these cases may be conceded. Nevertheless, paragraph 119 provides that: "No official business shall be transacted by the directors except at a regular or a special meeting," and paragraph 120 of chapter 122 of the same Statute provides: "On all questions involving the expenditure of money, the yeas and nays shall be taken and entered on the records of the proceedings of the board."

The secretary of the board was present at the gathering in question, and no minutes of the meeting were taken or kept, nor have been since established, nor is it claimed that this gathering was either a regular or special meeting of the board called in any manner. The Appellate Court of the First District had these sections under consideration in *School Directors v. Jennings*, 10 Ill. App. 645, and Mr. Justice Bailey said:

"The validity of the contract is assailed on the further ground that it does not appear to have been made at either a regular or special meeting of the board of directors. By section 42 of the school law, as amended June 3, 1879, it is provided that, 'The board of directors shall hold regular meetings at such times as they shall designate, and they may hold special meetings as occasion may require, at the call of the president, or any two members, and no official business shall be transacted by the board except at a regular or special meeting.' Laws of 1879, p. 296. These provisions are not found in previous revisions of the school law, and must be regarded as placing further

limitations upon the power of school directors to perform official acts.''

And the court further said: ''We are inclined to the opinion, therefore, that under the law as it existed at the date of the contract sued in this case, the directors had no power to employ a teacher, except at a regular or special meeting of the board, and unless it is shown that the plaintiff was appointed at such meeting, the contract of the directors with her was entered into without authority of law, and is incapable of enforcement.''

The same rule is laid down in *Armstrong v. School Directors of Dist. No. 128,* 160 Ill. App. 430, and *Board of Education v. School Directors,* 213 Ill. App. 94. The question is not raised in this case as it was raised in *Pollard v. School Dist.,* 65 Ill. App. 104, where a special meeting was actually had for a stated purpose, but no records kept, nor as held in *School Directors v. Kimmel, supra,* where a regular meeting of the board was held and minutes of the meeting kept, some matters of business transacted but not entered in the minutes, and in *Bartlett v. Board of Education,* 59 Ill. 368, a regular meeting of the board was held, but no minutes kept of the business transacted. It was held that what actually transpired might be shown by parol. In the case at bar, the most that can be made from the testimony, as adduced by appellants, when all of the members of the board were present, is that Royer, the architect, advised Schwartz ''to go ahead and complete the building and submit a statement showing what he had lost in the completion of the building, and we agreed to that, so he went ahead; that is, we agreed to pay him the loss he had sustained in completing the building.'' The board later did not pretend to settle on this basis but allowed Schwartz the amount of the second lowest bid, and the substance of all the testimony is, that some members favored meeting Schwartz's loss and others

did not favor such plan, but that it all occurred by individual suggestions from members of the board and no vote was taken. Informal and uncertain action of this kind by various members of the Board of Education cannot be the basis of official action under which the school district is to be burdened with an indebtedness of $24,500, and in the opinion of this court the district, by such action, never assumed any legal liability.

The decree of the lower court will be affirmed.

*Decree affirmed.*