## C. B. Postell and A. P. Wright, trading as C. B. Postell & Company, Appellees, v. Joseph Brothers Lumber Company, Appellant.

### Gen. No. 30,580.

1. Contracts—*when abandonment of contract to deliver lumber to consignee designated by buyer not justified by consignee's rejection of shipment.* Where a contract called for delivery by the seller of certain quantities of lumber of a specified grade to a consignee designated by the buyer, the fact that one consignment of such lumber, although of the grade specified by the contract of sale, was rejected by the consignee on the ground that it was not of the grade which the buyer had contracted to procure for such consignee, did not justify such seller in refusing to complete deliveries under the contract, the buyer having assumed full responsibility for the rejected consignment.

2. Contracts—*agreement to resume suspended performance of contract as consideration for additional compensation.* Where a contract for delivery of certain quantities of lumber to a consignee designated by the buyer was abandoned by the seller solely because of the rejection by such consignee of one shipment under such contract solely on the ground that it did not conform to the

specifications of the buyer's agreement with the consignee, the subsequent agreement of the buyer to pay an advanced price for the balance of the lumber originally contracted for, in consideration of the agreement of the seller to complete delivery of the balance, was without consideration and void.

3. CONTRACTS—*when agreement void for want of consideration not ratified by partial performance.* Where a buyer of lumber, in order to induce the seller to resume deliveries under their contract after the latter's unjustifiable abandonment thereof, had agreed to pay the seller an advanced price for the undelivered balance, the fact that the buyer thereafter paid certain invoices for deliveries made pursuant to the second agreement did not effect a ratification thereof, rendering it binding although initially void for want of consideration.

Appeal by defendant from the Municipal Court of Chicago; the Hon. WARREN H. ORR, Judge, presiding. Heard in the third division of this court for the first district at the October term. 1925. Reversed and cause remanded. Opinion filed May 5, 1926.

HYMAN SOBOROFF, for appellant.

HERBERT A. SCHRYVER, for appellees.

MR. PRESIDING JUSTICE THOMSON delivered the opinion of the court.

The plaintiffs are lumber manufacturers located in the State of Georgia. The defendant corporation is a dealer in lumber, located in the city of Chicago. The defendant company ordered a quantity of lumber of the plaintiffs, to be delivered to John Griffiths & Sons Company, as consignee, at Philadelphia, at a price of $49 per thousand feet board measure. This was covered by two orders, numbered 2675 and 2716, which orders were accepted by the plaintiffs and they commenced shipment of the lumber as called for. The plaintiffs brought this action to recover a balance they claimed to be due on lumber they delivered pursuant to this order, this balance amounting to $936.74. The defendant admitted owing a balance to the plaintiffs amounting to $284.29. Judgment was entered in favor

of the plaintiffs for the latter amount and this was paid, and the cause proceeded to trial as to the balance. The evidence was submitted to a jury, resulting in a verdict finding the issues for the plaintiffs and fixing the damages at $652.45. Judgment having been entered against the defendant for that amount, the defendant seeks to reverse it by this appeal.

Five cars of lumber were forwarded by the plaintiffs, in fulfillment of the orders given, and these were paid for by the defendant. Shipments were to be completed within three or four weeks. The first of the five cars shipped and paid for went forward on February 22, 1923, and the last of these five cars went forward on April 6, 1923. It appears that the lumber called for by these orders was what is known as No. 1 Common, and apparently the lumber shipped by the plaintiffs was of that grade. When a car, shipped on order 2675, reached Philadelphia, it was rejected by John Griffiths & Sons Company, on the ground that the lumber they had ordered from the defendant company was of a grade referred to in the evidence as No. 1 Common free from sap, and that the lumber shipped in fulfillment of this order was not up to that grade. When this lumber which the plaintiffs had shipped in fulfillment of their contract with the defendant was not accepted by the defendant's consignee, the plaintiffs refused to make further shipments on order 2675. As one of the witnesses put it, "We (plaintiffs) did not like this treatment, because they were giving us the bag to hold by rejecting our material that was up to grade, and we refused to fill the order further."

The record contains a number of telegrams and letters passing between the parties as a result of the situation presented when the lumber shipped by the plaintiffs was rejected by the defendant's consignee. On April 3, 1923, the defendant telegraphed the plaintiffs that the defendant's representative had wired the defendant from Philadelphia that he had made ar-

rangements with their customer, the consignee, "to accept stock on the balance of our order basing their judgment of the stock unloaded from car four fourteen eighteen. Please rush shipment all possible and wire when you will complete order." The plaintiffs sent a telegram to the defendant, under date of April 3, referring the defendant to a previous letter and wire sent by the plaintiffs, in which the latter had advised the defendant that if the material they had shipped on this contract was found up to the grade and specifications set forth in the defendant's orders, the plaintiffs would "not complete this order." This telegram went on to say that the plaintiffs had found that the car of lumber which the defendant's consignee had rejected was rejected because the lumber showed some sap; that the order sent to the plaintiffs by the defendant called for No. 1 Common, whereas the contract the defendant had made with John Griffiths & Sons Company called for No. 1 Common free from sap, and the one who had inspected the lumber upon arrival at Philadelphia had rejected it because it included some sap wood. The plaintiffs sent the defendant another telegram on the following day, April 4, apparently in response to the telegram from the defendant dated the previous day, and in this telegram the plaintiffs referred to the telegram they had sent the defendant on the previous day, "stating we would consider this order cancelled if car in question found to grade. Same being this we have considered order cancelled. This decision final." Apparently, in reply to the telegram last mentioned, the defendant wired the plaintiffs on the same day, April 4, saying, "our customer has agreed to accept stock as shipped. Further than this, you should not be interested in any transaction between our customer and ourselves. We are fully capable of taking care of our own business. We bought No. 1 Common from you and that is all you are expected to ship. If you complete your contract, the rest of the

burden of responsibility lies with us. As long as we guarantee payment of stock shipped as per our order and you comply with these orders, then you have fulfilled your contract. We insist that you make arrangements to ship out the balance of our order without any further delay."

On the same day, April 4, 1923, the plaintiffs wrote the defendant a letter reciting the position they had taken, as outlined in their previous telegrams. In this letter the writer stated that when he learned that the consignee had rejected one of the cars shipped by the plaintiffs on their contract with the defendant he went to Philadelphia and saw the lumber contained in this car and found that it was up to the grade specified by the defendant in its orders to the plaintiffs, and pointing out that the car had been rejected, not because it did not come up to that grade, but because it was not of the grade which had been specified in the contract the defendant made with John Griffiths & Sons Company, and that there would have been no rejections if the defendant had specified in its contract with the plaintiffs the same grade which they had agreed to furnish, according to the terms of their contract with John Griffiths & Sons Company. The plaintiffs then repeated their position as previously stated in their telegrams where they had advised the defendant that if they found the rejected stock up to the grade called for by the orders given them they "would consider this order cancelled, which we have done, * * * owing to the circumstances that have presented themselves in this transaction, we are washing our hands of same."

Again on April 5, 1923, the defendant wired the plaintiffs stating further that they were wiring again "to make it emphatic at this time that we bought strictly number one common Long Leaf Yellow Pine from you and you agreed to sell and ship same for us. Regardless of any differences that we may have with our customer this is our obligation and it is up to us and not

you to adjust our matters with them. You obligated yourself to ship this lumber as called for by our order * * *. Unless you wire within twenty-four hours from date that you will agree to ship balance of our order we will go out on the open market rebuy same and institute suit against you to recover any damages that might be incurred in the repurchase of same. This is our final decision.'' On the following day the plaintiffs replied to the defendant's telegram of April 5, 1923, the substance of this telegram being a confirmation of the position the plaintiffs had already taken, and advising the defendant that so far as the plaintiffs were concerned, the defendant's orders were cancelled.

The evidence further shows that a representative of the defendant then went down to Georgia and had some conference with the plaintiffs and finally told them that the defendant would be willing to pay the plaintiffs an additional $2 per thousand feet for the balance of the lumber ordered, if the plaintiffs would ship it, and the plaintiffs agreed to ship the balance of the lumber at that increased price. This arrangement was covered by an agreement in the form of a letter addressed to the plaintiffs and signed by the defendant, in which the defendant agreed to pay $51 per thousand feet on their order No. 2675, for No. 1 Common Southern Yellow Pine (the same grade called for by the original order). At the bottom of this letter is an acceptance in writing signed by the plaintiffs. The plaintiffs shipped the balance of the lumber under the so-called new agreement of April 12, 1923, and sent invoices to the defendant at the new price of $51 per thousand feet, and a number of these invoices were paid by the defendant, and on others the defendant remitted for only 80 per cent of the amounts called for.

At the close of all the evidence, the court instructed the jury that ''for all the lumber shipped under the new or modified agreement entered into by and between the plaintiffs and the defendant, dated April 12,

1923, the plaintiffs are entitled to recover at the rate of $51 per thousand feet.''

The only question presented on this appeal is whether the plaintiffs are entitled to recover from the defendant the increase of $2 per thousand feet, which was specified in their so-called new agreement of April 12, 1923. In support of this appeal the defendant contends that there was no consideration for its promise to pay the increased price and therefore that such promise is not binding. On the contrary, the plaintiffs' position, in support of the judgment appealed from, is that inasmuch as they canceled the original order here involved, and the defendant was then in a position where it was obliged to either resort to litigation, under the original contract, or, if they chose to, enter into a new agreement with the plaintiffs, and they chose the latter course rather than the former, the new contract is binding and based on sufficient consideration. In support of that position the plaintiffs rely upon *Bishop v. Busse,* 69 Ill. 403; *Cooke v. Murphy,* 70 Ill. 96; *Commercial Car Line v. Anderson,* 224 Ill. App. 187; *Scanlon v. Northwood,* 147 Mich. 139, and *United Steel Co. v. Casey,* 262 Fed. 889. In our opinion *Bishop v. Busse, Cooke v. Murphy,* and *Commercial Car Line v. Anderson, supra,* may be distinguished from the case at bar, on the facts. The same is true of *United Steel Co. v. Casey, supra.* In all of those cases, after the original contract had been entered into, there was a material change in existing conditions, which (at least in the first two cases referred to), was not contemplated by the parties at the time the contracts were made, and these changed conditions were such that the party who had undertaken to do certain work for a specified compensation was certain to suffer a substantial loss, and for that reason that party notified the other that he would not proceed with the work under the contract but would abandon it, whereupon, the other party stated that if he would fulfil the

contract he would undertake to pay more money, and it was held in each of those cases that there was sufficient consideration to support the promise to pay the additional amount. No such situation is presented by the facts in the case at bar. No situation arose which involved new facts making it burdensome for the plaintiffs to furnish the lumber contracted for. The conditions existing at the time the agreement of April 12 was entered into were precisely as they were at the time the original contract was entered into, except that the consignee of the lumber purchased by the defendant under this contract with the plaintiffs had rejected one of the cars shipped, although it was up to the grade ordered by the defendant, on the ground that it was not up to the grade which the defendant had agreed to deliver to the consignee. So far as the parties to this case are concerned, that position of the consignee, of course, had nothing to do with the situation. As the defendant put it repeatedly in communications to the plaintiffs, any such situation was a matter for the defendant to adjust with its consignee. The plaintiffs had only to deliver the lumber called for by their contract with the defendant, and the defendant kept assuring the plaintiffs that upon their doing so the defendant would make the payments called for by the contract. In such a situation the plaintiffs were without a justifiable ground for canceling the defendant's order and refusing to make further deliveries.

So far as the law in Illinois is concerned this question has arisen in a number of other cases in which the element of some unforseen difficulty, arising to make performance of the contract more burdensome, has not been involved, and the rule laid down in these cases has been the opposite of that announced in *Bishop v. Busse* and *Cooke v. Murphy, supra; Loach v. Farnum,* 90 Ill. 368; *Phœnix Ins. Co. v. Rink,* 110 Ill. 538; *Havana Press Drill Co. v. Ashurst,* 148 Ill. 115, 136; *Davidson v. Burke,* 143 Ill. 139; *Goldsborough v.*

*Gable,* 140 Ill. 269; *Nelson v. Pickwick Associated Co.,* 30 Ill. App. 333; *Moran v. Peace,* 72 Ill. App. 135; *Reeves Pulley Co. v. Jewell Belting Co.,* 102 Ill. App. 375; *Strange v. Carrington, Patton & Co.,* 116 Ill. App. 410.

The foregoing cases all follow the rule that it is no consideration for one to promise to do what he is already under legal obligation to do. After stating that rule in *Moran v. Peace, supra,* this court said:

"What was said by the Supreme Court in the case of *Bishop v. Busse,* 69 Ill. 403, to the effect that an agreement between an owner and a contractor changing the amount to be paid for building a house under a written contract previously made, was based on a good consideration, where the contractor having stopped work and declined to complete his contract previously made, agreed, if the owner would pay an increased price that he would then proceed with his work, must be considered as in conflict with the latter, as well as previous decisions of the same court, and therefore overruled by the later cases above cited." *Phœnix Ins. Co. v. Rink, supra; Havana Press Drill Co. v. Ashurst, supra.* In a number of the later cases in this court, which we have cited, *Moran v. Peace* has been referred to with approval and followed. In *Strange v. Carrington, Patton & Co., supra,* it was said that: "It is a well-recognized general rule that the agreement of a party to perform an obligation already binding on him, cannot form a consideration for an undertaking by the other party to perform another act." (Citing cases.) "Tested by this rule, it would seem that the agreement by appellee's agent to advance $2,000 and to grant an extension of time, was a mere gratuity—an undertaking by it to oblige the performance by appellant of an act he was already bound to perform. As a consideration for this alleged promise, appellant was not bound to deliver any more grain, nor of a better quality, nor at any other time or place, nor at a less price, nor had

any substantial and unforeseen difficulty arisen to prevent the performance of his contract.

"*Bishop v. Busse,* 69 Ill. 403, and *Cooke v. Murphy,* 70 Ill. 96, are cited as sustaining appellant's contention that the evidence was competent upon the ground that the mutual promises of the respective parties formed a sufficient consideration for what is termed the substituted agreement. If the cases cited cannot be said to have been overruled by, or to be in conflict with, the other cases above mentioned, the facts in the cases upon which the holdings were predicated, were different from the facts in the case at bar, and the cases are readily distinguishable." The court then proceeds to distinguish the cases, on the ground that in the case then before the court no attempt had been made to terminate the original agreement, as in the cases cited.

In *Board of Education of Villa Grove Tp. High School Dist. No. 231 v. Barracks,* 235 Ill. App. 35, the rule laid down in *Bishop v. Busse* and *Cooke v. Murphy, supra,* was not followed even though it did appear that unforseen conditions had arisen making the performance of the contract more burdensome. See also I Williston on Contracts, ¶¶ 130, 130a; 6 Am. & Eng. Ency. of L. (2nd Ed.) 750; L. R. A. 1915 B 37; 9 Cyc. 349.

However, under either line of decisions to which we have referred, we are of the opinion that the plaintiffs are not in a position to recover as it appears that no conditions had arisen which may reasonably be said to have made it more burdensome for them to carry out their original undertaking when the new agreement was entered into.

It is urged further by the plaintiffs in support of the judgment appealed from that the defendant ratified the new contract by making payments on invoices rendered on a basis of the increased price stipulated in the so-called new agreement of April 12. In our opinion that contention is not sound. We are unable to see how

one could be bound by a so-called ratification of an agreement which was not binding in the first place because it lacked consideration. A similar contention was made in several of the cases cited above and was held not tenable. *Loach v. Farnum, supra.*

For the foregoing reasons, we are of the opinion that the promise of the defendant to pay the additional $2 per thousand feet was without consideration and therefore void. We are, therefore, further of the opinion that the trial court erred in instructing the jury to the contrary and in refusing the instruction submitted by the defendant, in which it was sought to have the court instruct the jury that if they believed from the evidence that the material undertaken to be delivered under the second contract was, in substance, the same material as undertaken to be delivered under the first contract, and if the consideration for the second undertaking was merely to deliver the material which they were obligated to deliver under the first contract, then there was no consideration for the second undertaking. The record shows that the defendant did not move for an instructed verdict at the close of all the evidence.

The judgment will be reversed and the cause remanded.

*Judgment reversed and cause remanded.*

TAYLOR and O'CONNOR, JJ., concur.