**A. Marcus, Appellant, v. S. S. Kresge Company, Appellee.**

**Gen. No. 38,005.**

Opinion filed February 11, 1936.

Jesse Marcus, of Chicago, for appellant.

Kirkland, Fleming, Green & Martin, of Chicago, for appellee; David Jacker, William H. Symmes and John M. O'Connor, Jr., all of Chicago, of counsel.

Mr. Justice Friend delivered the opinion of the court.

Plaintiff sued in assumpsit to recover $4,538 additional compensation for work done in the erection of a store building for defendant in the City of Chicago. Plaintiff's declaration consisted of an amended first count and the common counts. By leave of court the common counts were withdrawn. To the amended first count defendant filed a general demurrer, which was sustained by the court. Plaintiff elected to abide by his declaration, and the court dismissed the suit at plaintiff's costs. This appeal followed.

The amended first count alleged that plaintiff was engaged in business as a general building contractor, and on April 30, 1930, entered into a written contract to construct for defendant a two-story building located at 1357–61 E. 55th street, in Chicago, for a stated consideration of $48,648. Plaintiff undertook to furnish all labor and material required and to execute all the work according to plans and specifications attached to the contract.

As bearing upon the principal question in controversy, the specifications attached to the agreement contained the following provision:

"Note.

"The general figures and price for this work to be based on any and all existing soil conditions and formations, except ledge rock.

"If excavation in ledge rock formation is encountered, the excavator must mine and remove the same, using channeling and drilling machines operated by

air power. Excavations in such rock formation to be done as per city ordinances or laws governing such cases. Contractors must state in their bids the extra amount per cubic yard to be paid for excavations in ledge rock,—this price to include 'line drilling.'

"Any and all loose rock or other loose matter encountered must be removed without extra charge."

The amended first count further averred that plaintiff commenced excavating for the building in question April 30, 1930; that the foundation for the building described in the contract was generally known as a "spread footing," which in buildings of this kind generally does not exceed the depth of 20 feet below the surface of the ground, and that the foundation for this particular structure did not exceed the depth of 20 feet; that in excavating for spread footing foundations quicksands are not generally encountered in the ground between the depth of 20 to 30 feet, and persons contracting for the erection of buildings such as the one called for in the agreement have knowledge that quicksands are not encountered, and that the contract prices for the erection of such buildings are fixed upon the assumption that no quicksand will be encountered; that when the parties entered into the agreement herein they did not contemplate that any quicksand would be encountered, in arriving at the contract price of $48,648; that the words, "all existing soil conditions and formations," contained in the specifications, when applied to buildings such as the one described in this agreement, did not and do not, by general custom and usage, include quicksand.

It is further alleged that the specifications contained, among others, the following provisions:

"Wherever the words 'Supervisor of Construction Division' are used it refers to the delegated representative of the Owner who will supervise, and have full control of the award of contracts and of the construction work in the field.

"Wherever the words 'Division Superintendent' are used it refers to the delegated representative of the Supervisor of the Construction Division who will be in charge of field construction in a certain geographical subdivision of the territory in which building operations are to be conducted. The Division Superintendent shall have power to decide all matters coming up in connection with the field construction in his territory, subject, however, to the approval of the Supervisor of the Construction Division.

"Wherever the words 'Job Superintendent' are used it refers to the representative of the Supervisor of the Construction Division who is in direct charge .of the work at the site. He shall have power to decide all matters coming up, subject, however, to the approval of the Division Superintendent."

It is averred that when plaintiff commenced the work for the erection of the building in question, defendant had on the job a representative designated as "Job Superintendent"; that for several years preceding the execution of the agreement, the parties herein had entered into numerous contracts for the erection of buildings; that during the course of the execution of the work under these prior contracts disputes arose from time to time as to whether certain work was or was not covered by the contracts, and when such disputes arose the job superintendent authorized plaintiff to proceed with the additional or disputed work under a promise to pay therefor, and plaintiff, relying upon such order and promise of the job superintendent, proceeded with the work and was paid therefor by defendant pursuant to a. practice and course of dealing adopted by the parties herein.

It is further alleged that about May 17, 1930, plaintiff commenced excavating for a spread footing foundation for the building in question, and while so engaged encountered quicksand, which hindered and delayed him in and about his work, necessitating the

expenditure of an additional $4,538, over and above the sum contemplated by the parties in their contract; that plaintiff then called to the attention of the job superintendent the fact that plaintiff was not obligated under his contract to pay any additional money necessitated by the encountering of the quicksand; that the job superintendent, acting under his powers and with the approval of the division superintendent, thereupon ordered and directed plaintiff to proceed with the work and promised to pay plaintiff the sum of $4,538 in addition to the contract price; that plaintiff, relying upon practice theretofore established between the parties, and upon the order of the job superintendent and his promise to pay, proceeded with the work and completed the building; that defendant accepted the building from plaintiff as completed, with full knowledge of the order and promise made by the job superintendent and knowing that plaintiff was relying upon the order and promise of the job superintendent to supply the additional work under the oral promise made.

In conclusion, it is averred that upon completion of the building plaintiff demanded the additional sum of $4,538, which defendant refused and still refuses to pay, wherefor plaintiff brings suit for the recovery thereof together with interest at the rate of six per cent per annum since July 26, 1930.

It is urged on behalf of plaintiff that he is entitled to recover the additional costs incurred by him and necessitated by a condition which neither party contemplated at the time the contract was made, because (1) the demurrer admits all the allegations well pleaded in the declaration; (2) defendant's promise to pay was based on a sufficient consideration; (3) that since the parties had established a course of dealing between them, their practices in the past may be resorted to in order to determine whether plaintiff is

entitled to recover; and (4) that defendant accepted plaintiff's work and was therefore bound to pay therefor.

Plaintiff argues that by its demurrer defendant admitted that quicksand in the particular locality on which this building was to be erected is not encountered at a depth of 20 to 30 feet; that it was not necessary to dig deeper than 20 feet in excavating for the foundation of the building in this case; that the defendant had knowledge of the same and acted thereon; that the contract price was based on such knowledge and that quicksand was not within the contemplation of the parties when the contract price was fixed.

It may be conceded that a demurrer admits all facts well pleaded, but from this it does not follow that by its demurrer defendant has admitted that quicksand did not come within the provisions of the contract. The pertinent allegations contained in the declaration as to the provisions of the contract involved are as follows:

"That the foundation for the building described in said contract was generally known as a 'spread footing'; that a spread footing foundation for buildings of the kind called for in said contract generally does not exceed the depth of twenty (20) feet below the surface of the ground and that the depth of the foundation for the building erected by the plaintiff, described in said contract, did not exceed the depth of twenty (20) feet.

"That in excavating for spread footing foundations for buildings as to one called for in said contract, quicksands are not generally encountered in the ground between the depth of twenty (20) to thirty (30) feet and that persons contracting for the erection of buildings as the one described in the contract, calling for spread footing foundations, have knowledge that quicksands are not encountered and that the contract price

for the erection of said buildings is agreed upon without reference to encountering any quicksand in the excavation for such foundations.

"That the parties hereto, in entering into said contract, of April 30, 1930, for the erection of said building, did not take into consideration that quicksand may be encountered in the excavating for the foundation of said building and that the contract price of Forty-Eight Thousand Six Hundred Forty-Eight Dollars ($48,648) was agreed upon without reference to encountering quicksand on said premises.

"That the words, 'all existing soil conditions and formations,' contained in said specifications, when applied to buildings as the one described in said contract, did not, and does not, by general custom and usage, include quicksand, which general custom and usage was in existence at the time said contract was entered into and known to the parties hereto."

By its demurrer defendant did not admit the truth of these allegations. Some of them were clearly inferences from the facts pleaded, which are not admitted (*Arenz v. Weir,* 89 Ill. 25), and others were conclusions of fact and law. All that defendant admitted by its demurrer was the making of the contract and specifications and that quicksand was encountered by plaintiff in laying the foundation, but the averments that "In excavating for spread footing foundations for buildings as the one called for in said contract, quicksands are not generally encountered in the ground between the depth of twenty (20) to thirty (30) feet and that persons contracting for the erection of buildings as the one described in the contract, calling for spread footing foundations, have knowledge that quicksands are not encountered, and that the contract price for the erection of said buildings is agreed upon without reference to encountering any quicksand in the excavation for such foundations," are mere conclu-

sions of the pleader, and are not admitted by the demurrer. (*Marcovitz v. Hergenrether,* 302 Ill. 162; *Big Creek Coal Co. v. Tanner,* 303 Ill. 297.) Moreover, the agreement and specifications are by reference made a part of the declaration, and therefore control the allegations thereof. It was so held in *Keller v. Reed,* 347 Ill. 645, which involved a bill praying for the specific performance of a written agreement for the sale of realty. A demurrer to the bill was overruled, and in discussing the question under consideration the Supreme Court said:

"While the demurrer here filed admitted facts well pleaded it did not admit the conclusions of defendant in error or his interpretation of or construction placed upon the alleged contract of sale. The bill was based upon the alleged contract of sale, which, as an exhibit, was made a part thereof by reference. It controls the allegations of the bill. (*Armstrong v. Building Ass'n,* 176 Ill. 298; *Forster v. Brown Hoisting Machinery Co.,* 266 id. 287; *Price v. Solberg,* 269 id. 459; *Big Creek Coal Co. v. Tanner,* 303 id. 297; *Mitzlaff v. Midland Lumber Co.,* 338 id. 575.) . . ."

We think it follows that since the specifications provided that the general figures and price for the work were to be based on "any and all existing soil conditions and formations, except ledge rock," and that "any and all loose rock or other loose matter encountered must be removed without extra charge," that quicksand, as well as any other or all existing soil conditions were within the contemplation of the parties when the contract was made. The one exception to the general language employed relates to ledge rock formations, and special provisions are included in the contract to cover that contingency. Under the circumstances we think the demurrer did not admit that quicksand was not within the contemplation of the parties, but on the contrary that it was covered under

the general provisions of the specifications hereinbefore set forth.

The sufficiency of the allegation that the job superintendent, with the approval of the division superintendent, ordered and directed plaintiff to proceed with the work and promised to pay plaintiff the additional sum of $4,538 therefor, when tested by demurrer, admitted that the job superintendent gave the order and made the promise to pay, with the approval of the division superintendent, but under the second paragraph of the specifications hereinbefore set forth it is provided that:

"The Division Superintendent shall have power to decide all matters coming up in connection with the field construction in his territory, subject, however, to the approval of the Supervisor of the Construction Division."

Therefore, it seems that under the express agreement of the parties the division superintendent could not render such an order or make a promise to pay, as alleged, without the approval of the supervisor of the construction division, and it is nowhere alleged in the amended first count that the supervisor of the construction division gave his consent or approval to pay the additional sum claimed. Defendant would not be bound by the action of the job superintendent even though it had the approval of the division superintendent.

The principal controversy between the parties arises out of the question whether the alleged promise to pay the additional $4,538 is supported by a good and sufficient consideration, and the major portion of both briefs is devoted to a discussion of that question. Plaintiff relies principally upon several citations from other States and three Illinois decisions, viz., *Bishop v. Busse*, 69 Ill. 403; *Cooke v. Murphy*, 70 Ill. 96, and the recent case of *Great Lakes Dredge & Dock Co. v. City*

of Chicago, 353 Ill. 614. In *Bishop v. Busse,* plaintiff was employed under a special verbal agreement to furnish materials and erect a building. Finding himself unable to perform his contract without considerable loss, owing to a rise in prices, he informed defendant that he would not comply with the contract, whereupon defendant directed him to complete the work and promised to pay him ''what was right'' for it. The court held that the mutual promises of the parties were sufficient to support the new agreement and constituted a sufficient consideration therefor. In *Cooke v. Murphy,* plaintiff, who was engaged to furnish materials and perform work in the erection of a building, claimed that he had made a mistake of $500 in the contract price and refused to complete the contract, whereupon defendants agreed to pay the $500 in addition to the original contract price. The court held that the new and supplemental agreement to pay the additional sum was not without consideration, but was valid and binding.

These two cases are frequently quoted in later Illinois decisions. One of these is *Moran v. Peace,* 72 Ill. App. 135, which involved a building contract covering the prices of masonry. Plaintiff, a contractor, presented his bill which defendant paid after making a deduction because of a claimed violation of the terms of the contract. Plaintiff brought suit and upon hearing was permitted to show that after the contract was made and the work thereunder had progressed for some time, there was a verbal agreement between the parties that there should be no deduction from the contract price. In reversing the judgment the court said that the verbal agreement was void for lack of consideration, since Peace was bound by his contract to furnish the stone independent of any agreement on the part of Moran that his estimates should be paid without deduction, and citing numerous cases to support

the conclusion that "It is no consideration that one promises to do what he is already under a legal obligation to do."

In commenting on *Bishop v. Busse, supra,* the court said (p. 139):

"What was said by the Supreme Court in the case of *Bishop v. Busse,* 69 Ill. 403, to the effect that an agreement between an owner and a contractor changing the amount to be paid for building a house under a written contract previously made, was based on a good consideration, where the contractor having stopped work and declined to complete his contract previously made, agreed, if owner would pay an increased price that he would then proceed with his work, *must be considered as in conflict with the later, as well as previous decisions of the same court, and therefore overruled by the later cases above cited."* (Italics ours.)

In *Postell v. Joseph Bros. Lumber Co.,* 240 Ill. App. 384, the court, in discussing the question under consideration, said (pp. 391, 392):

"So far as the law in Illinois is concerned this question has arisen in a number of other cases in which the element of some unforeseen difficulty, arising to make performance of the contract more burdensome, has not been involved, and the rule laid down in these cases has been the opposite of that announced in *Bishop v. Busse* and *Cooke v. Murphy, supra; Loach v. Farnum,* 90 Ill. 368; *Phoenix Ins. Co. v. Rink,* 110 Ill. 538; *Havana Press Drill Co. v. Ashurst,* 148 Ill. 115, 136; *Davidson v. Burke,* 143 Ill. 139; *Goldsborough v. Gable,* 140 Ill. 269; *Nelson v. Pickwick Associated Co.,* 30 Ill. App. 333; *Moran v. Peace,* 72 Ill. App. 135; *Reeves Pulley Co. v. Jewell Belting Co.,* 102 Ill. App. 375; *Strange v. Carrington, Patton & Co.,* 116 Ill. App. 410.

"The foregoing cases all follow the rule that it is no consideration for one to promise to do what he is already under legal obligation to do." To support this

conclusion the court then quoted the foregoing excerpt from *Moran v. Peace, supra.*

In *Board of Education v. Barracks,* 235 Ill. App. 35, Schwartz, a contractor, had submitted a bid for the erection of a school building, which was accepted. After commencing work, he found that due to war conditions prices had arisen, and he decided to abandon the completion of the structure unless the board would pay the additional cost. The board so agreed, and issued warrants for the extra amount. One of the warrants was paid and suit was brought by taxpayers to restrain further payments. An injunction was issued, and the decree was affirmed on appeal. After quoting from *Bishop v. Busse* and *Cook v. Murphy, supra,* the court said (p. 44):

"These cases do not support the doctrine that a party to a contract may in any and every case terminate the contract and enter into a new and modified agreement for an added consideration but that they may do so only in those cases where some benefit or advantage is to accrue to the other party, by reason of such modification of the agreement. The benefit or advantage to the other party is not to be presumed in every case. The true rule is that, 'the consideration required to support a new agreement by the parties to an old one, by which they modify, in one or more particulars, their former contract or replace it with a substitute, must be reciprocal. Each party must gain something by the change. If the benefit is unilateral, a consideration is lacking, for it is widely recognized and a well-established legal principle that doing or undertaking to do only that which one is already under a legal obligation to do by his contract is no consideration for another's agreement.' *Russell v. Lambert,* 14 Idaho 284, L. R. A. 1915 B 37; *McKinley v. Watkins,* 13 Ill. 140; *Barnett v. Barnes,* 73 Ill. 216; *Loach v.*

*Farnum,* 90 Ill. 368; *Goldsborough v. Gable,* 140 Ill. 269.''

In *Strange v. Carrington, Patton & Co.,* 116 Ill. App. 410, plaintiff brought an action to recover damages for the breach of a contract to sell and deliver corn and oats. After the contract had been made defendant sought from plaintiff's agent a discount of $2,000 before delivery, claiming that he had been promised the money. In discussing the promise the court reaffirmed the well established principle that an agreement to perform an obligation already binding, cannot form a consideration for an undertaking by the other party to perform another act, and cited numerous cases, including some of those relied upon by defendant herein. In referring to the *Bishop v. Busse* and *Cooke v. Murphy* cases, the court said (pp. 412, 413):

''If the cases cited cannot be said to have been overruled by, or to be in conflict with, the other cases above mentioned, the facts in the cases upon which the holdings were predicated, were different from the facts in the case at bar, and the cases are readily distinguishable. In one of those cases there was an abandonment of the work by the party bound to perform, and in the other, an absolute refusal to perform, whereby the original contracts were held to have been terminated and the new agreements substituted, and in both cases the conditions had changed, whereby additional work was required to be performed.''

From these later decisions it clearly appears that the reviewing courts of this State have not followed the doctrine laid down in *Bishop v. Busse,* and *Cooke v. Murphy, supra,* and have either distinguished them from the facts in later cases or held them to be in conflict with the more recent decisions. Various authorities in other jurisdictions are also relied upon by plaintiff. From a careful examination of these decisions we find that in almost every instance there was either a complete rescission and abandonment of the

contract by plaintiff or a threatened abandonment which induced the new promise. In both *Bishop v. Busse* and *Cooke v. Murphy,* plaintiff notified defendant that he would not comply with the original undertaking which preceded the new promise. Even under circumstances where there has been an actual or threatened abandonment the decisions are divergent. Some States hold the new promise to pay the demand binding, though there be no rescission, but the current weight of authority in Illinois, as shown by the decisions hereinbefore cited and discussed, is otherwise. Of course, where there is a complete rescission, and the relationship of the parties is terminated, leaving them entirely free from the earlier contract, a subsequent agreement would be good. But no such circumstances are disclosed by plaintiff's declaration herein; not even a threatened abandonment is alleged; there is merely the allegation of a promise to pay the additional amount required to meet an unexpected condition, and none of the cases cited by plaintiff go so far as to hold that such a promise is anything more than a mere *nudum pactum*. The conclusion here reached is supported by *Schwartzreich v. Bauman-Basch, Inc.,* 231 N. Y. 196, wherein the court, in commenting on the case of *Abbott v. Doane,* 163 Mass. 433, says:

"The almost universal rule is that *without any express rescission of the old contract, the promise is made simply for additional compensation, making the new promise a mere nudum pactum.*"

The only other case cited by plaintiff, upon which considerable reliance is placed, is *Great Lakes Dredge & Dock Co. v. City of Chicago,* 353 Ill. 614. The City of Chicago had there adopted an ordinance for straightening of the lower branch of the Chicago river, and the commissioner of public works was empowered to enter into contracts for the work and to supervise same. He entered into an agreement with plaintiff

which provided in effect that if it should become proper or necessary to make any alterations which would increase the expenses, the commissioner should report to the city council the nature of such alterations and his estimate of the amount by which the expenses would be thereby increased, and that no payments should be made to the contractor for any additional sum unless such changes, requiring additional outlay, should first have been especially authorized by the city council and ordered in writing by the commissioner of public works. Nevertheless the Supreme Court approved the recovery of $150,000 for additional work, but evidently not upon the theory for which plaintiff contends. Due to the fact that the high water was about four feet above the flow line, the contractor found it impossible to continue the work, and after something over $20,000 had been expended in an effort to cope with the high water conditions, the contractor called the commissioner's attention to the situation and requested an extension of time within which to complete the contract, hoping in the meantime that the water would recede. The commissioner thereupon directed plaintiff to incur the additional expense necessary to perform the contract within the time limit, but no authorization therefor was obtained by the city council. It was admitted that the circumstances which necessitated the extra expense had not been contemplated by the contract, and the court held that the payments for additional material and labor were specifically authorized under the agreement. The court also justified the additional expense upon the theory of estoppel, saying that after it had accepted the benefits of the work the city could not deny that its agent, the commissioner, was without power to make the contract. There is nothing in that decision, however, which lends support to the legal theory of consideration advanced by plaintiff, nor do we find any cases which would justify us in holding that there was a sufficient con-

sideration for the new promise under the allegations of the declaration herein. We therefore hold that the alleged promise to pay the additional sum of $4,538 was without consideration and unenforceable.

The other contentions advanced by plaintiff are without merit. One is that under the established course of dealing between the parties, practices in the past may be resorted to in order to determine whether plaintiff was entitled to recover. Since there is no showing that the prior contracts relied upon contained the same provisions as does the one under consideration, this contention is untenable. Whatever other dealings may have been pursued in the past as regards other structures would not necessarily have any connection with this transaction. The contract between the parties was specific, and under seal, and it would be contrary to the established rule of law in this State to permit the terms of such an agreement to be affected by parol evidence of other transactions, allegations concerning which are at best vague and uncertain. The last point, namely, that acceptance of the work by defendant creates a liability on its part to pay the additional compensation, is not supported by *Great Lakes Dredge & Dock Co. v. City of Chicago, supra,* as plaintiff contends, because, there, unlike the circumstances of this case, claim for the additional amount had not been contemplated by the original undertaking between plaintiff and the City of Chicago, and mere acceptance of the work by defendant would not create an obligation to pay the additional sum unless there was a sufficient consideration for the new promise.

For the reasons stated herein, we are of the opinion that the demurrer to the amended count one of plaintiff's declaration was properly sustained, and the judgment of the circuit court is therefore affirmed.

*Affirmed.*

Scanlan, P. J., and Sullivan, J., concur.