CHARLES GREENBERG, Plaintiff-Appellant, v. MALLICK MANAGE-MENT, INC., Defendant-Appellee.

First District (2nd Division) No. 87—2692

Opinion filed August 2, 1988.

654

Andrew J. Creighton, of Chicago, for appellant.

Anthony L. Russo, of Russo & Russo, Ltd., of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

This is an appeal from an order granting the defendant's motion for summary judgment in a breach of contract action. The trial court held, as a matter of law, that a purported amendment to a contract lacked consideration.

In 1981, the defendant, Mallick Management, Inc. (Mallick), sold Toppers Restaurant to All That Jazz—Topper's Restaurant, Inc. (All That Jazz). The plaintiff, Charles Greenberg (Greenberg), at that time owned 10% of the shares of All That Jazz. As part of the sales agreement, All That Jazz purchased all the personalty located inside the restaurant and gave Mallick a chattel mortgage which required All That Jazz to make monthly payments to Mallick.

Mallick, as owner of the realty upon which the restaurant was located, also entered into a lease agreement with All That Jazz which obligated All That Jazz to make monthly rental payments to him.

In early May 1984 Greenberg purchased the remaining shares and became the sole shareholder of All That Jazz. By late May 1984 All That Jazz was several months in arrears on its payments under both the chattel mortgage and the lease. Greenberg then decided to close

the restaurant.

Mallick then instituted foreclosure proceedings under the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 1—101 *et seq.*) in order to force the sale of the personalty covered by the chattel mortgage. Those proceedings were stayed when All That Jazz filed for bankruptcy.

Greenberg and Mallick entered into an agreement dated June 28, 1984 (First Agreement or June Agreement), which provided that Mallick would pay Greenberg the sum of $5,000 for all the personalty and $20,000 in consideration for Greenberg's promise not to compete with the new lessee for two years. In addition, the agreement contained the following clause:

"5. This Agreement is contingent upon dismissal of Bankruptcy No. 84 B 08081 prior to 11:00 a.m. on June 29, 1984. All sums payable hereunder shall be made at the conclusion of Agreement with new purchasers. Failure of MALLICK to pay GREENBERG the amounts provided for when due shall subject MALLICK to a penalty of 2% over prime from due date of payment to actual date of payment."

Greenberg was unable to dismiss the bankruptcy action by 11 a.m. on the following day, June 29, 1984, because bankruptcy rules require that there be a prior meeting with creditors and certain creditors objected to the dismissal.

In August 1984 Greenberg and Mallick signed a document titled "Amendment to Agreement Dated June 28, 1984 Between Charles Greenberg and Mallick Management, Inc." (Second Agreement or August Agreement). That Second Agreement read as follows:

"WHEREAS, it has been determined that bankruptcy case No. 84 B 08081 cannot be dismissed until after the first meeting of creditors and upon leave of court;

WHEREAS, both Mallick and Greenberg desire to amend their agreement dated June 28, 1984; IT IS AGREED:

1. The first sentence of Paragraph No. 5 is deleted and is null and void and the following language is substituted therefore:

'That agreement of June 28, 1984, is contingent upon attorneys for Greenberg executing and presenting to the United States Bankruptcy Court in Case Number 84 B 08081 an agreed application for relief from automatic stay and for authorization to sell collateral or dismiss Case No. 84 B 08081.'

2. That the last sentence of Paragraph No. 5 is amended to include 'and reasonable attorney fees.' "

The restaurant's liquor license had expired on May 30, 1984. Mallick's president testified at his deposition that he was unaware of the license expiration, and he failed to renew it. He further testified that he had negotiated for the sale or lease of the restaurant with the prospective tenant, but the deal was not consummated, in part, because of the loss of the liquor license.

On October 5, 1984, Mallick's attorney sent a letter to Greenberg's attorney which read in part as follows:

"Please be advised that the alleged Agreement dated June 28, 1984, between Mr. Greenberg and Mallick Management, Inc., is null and void because your client failed to comply with the intention set forth in said writing and any amendments thereto.

Therefore, my client is taking the necessary action to obtain a release of the automatic stay relating to the assets of Toppers Restaurant, Inc."

Greenberg's attorney responded by letter on October 12, 1984, in which he asserted that the actual reason for Mallick's actions was its loss of the liquor license. He characterized the defendant's conduct as an anticipatory breach of the contract.

On December 11, 1984, the defendant's attorney did obtain a partial release of the stay order in the bankruptcy court. According to the plaintiff's affidavit, that was done with the cooperation of his lawyer, and the bankruptcy case was later dismissed.

Our first task is to determine what issues are before us, because the parties have not made it clear. For that matter, it is not clear exactly what issues were before the trial court. The complaint alleged that both the June Agreement and the August Amendment were "for good and sufficient consideration." The defendant filed a motion for involuntary dismissal alleging that any payment was contingent upon a sale of the business to a potential lessee and that no potential lessee was ever submitted by the plaintiff; that the plaintiff abandoned the premises and that there was not any consideration for *either* agreement. That motion was ordered stricken. Another order was entered later granting the defendant leave to withdraw his motion to dismiss without prejudice on the ground that the motion should have been for summary judgment.

The motion for summary judgment was filed, alleging, in substance, that there was never a conclusion of an agreement with a new purchaser. There was no allegation of a lack of consideration. Memoranda of law were filed. In the reply memorandum the defendant alleged that it was entitled to summary judgment because the plaintiff

did not dismiss his bankruptcy suit before 11 a.m. on June 29, 1984. In the argument on that point, it anticipated that the plaintiff would argue that the time contingency in the original contract did not apply because the parties signed an amendment. The defendant said that the amendment did not become effective because it lacked consideration.

The defendant filed an amended motion for summary judgment. That amended motion alleged that there was never a conclusion of an agreement with new purchasers as provided in the agreement of June 29, 1984, and that the plaintiff never dismissed the bankruptcy case prior to 11 a.m. on June 29, 1984. There was nothing in the amended motion addressing the question of consideration for the August Amendment. The plaintiff filed a memorandum in opposition to the amended motion arguing that the defendant was not entitled to summary judgment based on the fact that the bankruptcy case was not dismissed on June 29, 1984, because the parties executed a modification of the contract in August. He argued that the amendment contained consideration and said further that "an executed contract modification, even without consideration, will not be disturbed by the courts," citing *Terminal Freezers, Inc. v. Roberts Frozen Foods, Inc.* (1976), 41 Ill. App. 3d 981, 354 N.E.2d 981. The defendant filed a reply brief distinguishing the *Terminal Freezers* case.

On May 7, 1987, the trial court allowed the defendant's motion for summary judgment on the "basis that the amendment to the contract dated June 28, 1984, lacks consideration." The plaintiff filed a motion for rehearing alleging that the plaintiff's agreements not to compete in the future and have the bankruptcy case dismissed were valid considerations. The defendant filed a response, and the court subsequently denied the motion for rehearing.

■ The defendant now states that there are only two issues before us: whether the August Agreement was supported by consideration and whether there is a question of material fact on the issue of waiver. It adds that other questions raised here by the plaintiff were not passed on by the trial court and, therefore, are not properly before us. This is an interesting position, because the defendant did assign other grounds for summary judgment and, as appellee, could properly argue here that the trial court could have granted summary judgment on those grounds. It is also a position that we cannot accept, because to do so would mean that, if we were to hold that the trial court erred in granting summary judgment on the ground it expressed, the defendant would be free to return to the trial court, argue the other grounds not expressly passed on, with a possible result

of another favorable ruling, and, subsequently, another appeal. Therefore, for the sake of judicial economy we hold that the other grounds advanced by the defendant were rejected by the trial court and, since the defendant has not urged an affirmance on those grounds, any error is waived.

Further, we have considered the other grounds advanced by the defendant and, even absent waiver, hold that summary judgment could not properly be granted on those grounds. Payment under the agreement was not conditioned on the sale of the business, and the failure to secure dismissal of the bankruptcy proceedings on June 29, 1984, is not a bar to recovery by the plaintiff.

■ There are other issues that have been raised by the plaintiff: waiver and the question of whether the August Agreement was a new and separate agreement or an amendment to the June Agreement. They have been raised in a confusing fashion. In the trial court the plaintiff did not argue that the August Agreement was a new contract until the court granted summary judgment. In this court the plaintiff argues that by signing the August Agreement the defendant waived compliance with the condition in the June Agreement and that the August Agreement was a modification. At the same time he argues, and not in the alternative, that the August Agreement was a new and separate contract containing a promise for a promise and, therefore, was supported by consideration. In view of the position we take here, it would serve no purpose to unduly lengthen this opinion with a recitation of evidence supporting our reasoning on this question. Suffice it to say that we agree with the trial court's holding that the August Agreement was a modification of or amendment to the June Agreement. That being so, we come to what we perceive to be the ultimate issue: Does an amendment to a contract require consideration, and, if so, was there consideration for the amendment of August 1984?

The principle dealing with consideration for modification to an agreement has a murky history. Two of the earliest cases were *Bishop v. Busse* (1873), 69 Ill. 403, and *Cooke v. Murphy* (1873), 70 Ill. 96, both decided in 1873. In *Bishop v. Busse,* the plaintiff builder entered into an agreement to build the defendant's home at a certain price schedule. After beginning the work the plaintiff informed the defendant that, because of the increase in price of materials, he was unable to finish the work pursuant to the agreement. The defendant told the plaintiff to finish the job and that he would pay what was right. The court held that the mutual promises of the parties to continue the project were sufficient consideration. The court pointed out that the

defendant could have declared that the contract was breached and sued for damages. Instead, he apparently decided that it was more advantageous for him to have the structure completed, and therefore, he elected to adjust the terms of the original agreement to pay the plaintiff more.

Cooke v. Murphy also involved a building contract. The builders discovered that they had miscalculated by $500 and asked the owner to pay an additional sum or to release them from the contract. The owner orally agreed to pay the additional amount but refused later. The court held that there was consideration for the supplemental agreement by virtue of the owner receiving the benefit of the builder's performance.

Fourteen years later, the appellate court decided Moran v. Peace (1897), 72 Ill. App. 135. The parties agreed to a certain price for masonry work and material. The agreement provided that the necessary stone could be secured from quarries in Indiana for $3 per cubic yard and the freight rate for those locations to the worksite would be 50 cents per ton. If the contractor was obliged to secure stone from other quarries which cost more, the owner would pay the difference. It also provided that if the freight rate was less than 50 cents per ton the owner would deduct the difference. The contractor obtained the stone from his own quarry, a fact which the appellate court emphasized, instead of obtaining it from the Indiana quarries and other quarries mentioned in the contract. The contractor was permitted to show that there was a subsequent verbal agreement between him and the purchaser that there should be no deduction from the contract price. The appellate court held that that verbal agreement was void, as being without consideration. In support of its conclusion, the court cited two texts, five cases from other jurisdictions and three cases from Illinois. One of the Illinois Supreme Court opinions was written before Bishop v. Busse and two after. The appellate court said that the holding of Bishop v. Busse "must be considered as in conflict with the later, as well as previous decisions of the same court, and therefore overruled by the later cases above cited." Moran v. Peace, 72 Ill. App. at 139.

None of the three Illinois Supreme Court cases involved modifications of contracts, and the two cases decided after Bishop v. Busse make no mention of it. The observation of the appellate court that the case decided before Bishop v. Busse, Runnamaker v. Cordray (1870), 54 Ill. 303, was in conflict with Bishop v. Busse is puzzling, because the same supreme court justice who wrote Runnamaker v. Cordray also wrote Bishop v. Busse and Cooke v. Murphy. It should be pointed

out that the evidence in *Moran v. Peace* not only disclosed no unexpected hardship for the plaintiff but possible sharp practices on his part.

In *Commercial Car Line v. Anderson* (1922), 224 Ill. App. 187, the plaintiff agreed to rent steel tank cars to the defendant at a certain rate. World War I was in progress. Economic conditions after the war caused a price depreciation for rental of steel cars. The parties orally agreed to a reduced price. The court upheld the validity of the second agreement against the contention that it lacked consideration. It cited with approval *Bishop v. Busse* and *Cooke v. Murphy*. It pointedly observed that the defendant's lawyers urged that they had "been overruled by certain subsequent decisions" and noted, in rejecting that contention, that the cases had not been expressly overruled by our *supreme court* and were in line with decisions of the supreme courts of other States. *Commercial Car Line*, 224 Ill. App. at 194.

Next came the case upon which the defendant principally relies, *Board of Education v. Barracks* (1924), 235 Ill. App. 35. In that case the contractor submitted a bid of $88,500 for the construction of a school building and that bid was accepted by the local school board. During construction the contractor informed the board that he would abandon the project because the war had caused the cost of materials to rise so sharply that cost of completion would be an additional $33,500 over the contract price, an amount the contractor could not absorb. The board agreed to pay the additional amount, and the project was completed. When he presented the bill to the board, a suit was brought by a taxpayer to enjoin the payment. The appellate court affirmed the order of injunction and explained *People v. Busse* and *Cooke v. Murphy* thus:

> "These cases do not support the doctrine that a party to a contract may in any and every case terminate the contract and enter into a new and modified agreement for an added consideration but that they may do so only in those cases where some benefit or advantage is to accrue to the other party, by reason of such modification of the agreement. The benefit or advantage is not to be presumed in every case." (*Barracks*, 235 Ill. App. at 44.)

It should be noted that *Barracks* involved public funds and bidding procedures governed by statute. Moreover, the appellate court affirmed the injunction order on the additional ground that the second agreement had not been properly approved by board action.

In *Postell v. Joseph Brothers Lumber Co.* (1926), 240 Ill. App. 384, the parties contracted for the sale of lumber. The buyer rejected

a shipment, alleging it was of an inferior grade. The seller refused to make any other shipments. The buyer threatened to go on the open market to buy the lumber and later institute suit against the seller, unless the seller agreed to ship the lumber pursuant to the agreement. The seller refused to ship. Other negotiations took place and the buyer agreed to pay an additional $2 per thousand feet of lumber. The appellate court held that there was no consideration for the subsequent agreement. The court distinguished *Bishop v. Busse, Cooke v. Murphy* and *Commercial Car Line v. Anderson,* because they involved a change in conditions which were such that a party who had undertaken to do certain work for a specified compensation would suffer a substantial loss. The court, citing with approval *Moran v. Peace,* implied that *Bishop v. Busse* and *Cooke v. Murphy* had been overruled.

In *Marcus v. S. S. Kresge Co.* (1936), 283 Ill. App. 556, the court made a comprehensive discussion of previous cases and also implied that *Bishop v. Busse* and *Cooke v. Murphy* had been overruled. It did not, however, mention *Commercial Car Line v. Anderson* and its express repudiation of the contention that *Bishop v. Busse* and *Cooke v. Murphy* had been overruled. The *Marcus* court also sought to distinguish those cases in that there was a threatened abandonment which induced a new promise. The court also made this pertinent observation, which we will discuss later:

> "In both *Bishop v. Busse* and *Cooke v. Murphy,* plaintiff notified defendant that he would not comply with the original undertaking which preceded the new promise. Even under circumstances where there has been an actual or threatened abandonment the decisions are divergent. Some States hold the new promise to pay the demand binding, though there be no rescission, but the current weight of authority in Illinois, as shown by the decisions herein before cited and discussed, is otherwise. *Of course, where there is a complete rescission, and the relationship of the parties is terminated, leaving them entirely free from the earlier contract, a subsequent agreement would be good."* (Emphasis added.) *Marcus,* 283 Ill. App. at 569.

Either *Bishop v. Busse* or *Cooke v. Murphy,* or both, have been cited by the Illinois Supreme Court on a number of occasions, the last in *Becker v. Morstadt* (1942), 381 Ill. 422, 45 N.E.2d 643. One of the cases is *Thayer v. Allison* (1883), 109 Ill. 180. In that case the parties agreed in writing to the sale of land. The agreement provided that either party had the right to rescind by a certain date. The parties later

agreed to extend the date. The seller sued on the contract; the buyer defended by testifying that he had rescinded the contract. The seller contended that there was no consideration for the agreement to extend the date. The supreme court affirmed judgment for the buyer, relying on *Cooke v. Murphy*.

Our analysis of the cases leads to the conclusion, first, that we cannot say that *Bishop v. Busse* and *Cooke v. Murphy* have been overruled by the supreme court, certainly not expressly, nor, do we believe, tacitly; second, that virtually all cases say that a modification of a contract requires consideration. The divergence in the opinions comes in the interpretation of what constitutes consideration.

■■ But there is other authority which supersedes many of the cases we have discussed: the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1987, ch. 26, par. 1—201 *et seq.*), which provides that an agreement modifying a sales contract needs no consideration to be binding (Ill. Rev. Stat. 1987, ch. 26, par. 2—209(1)). The comments point out that the purpose of the section was to make effective all necessary and desirable modifications of a sales contract without regard to the technicalities which, up to the time of enactment, hampered such adjustments. The comments also disclosed that the purpose of the statute was to change the rules under prior Illinois decisions. One of the cases cited as an example of a holding the statute was designed to change was *Postell v. Joseph Brothers Lumber Co.* (1926), 240 Ill. App. 384, previously discussed here.

But the right to modify without consideration is not absolute. That provision of the Code, like all others, is subject to the good-faith requirement of section 1—203 (Ill. Rev. Stat. 1987, ch. 26, par. 1—203). Consequently, the statute is not inconsistent with the holding of *Moran v. Peace* (1897), 72 Ill. App. 135, which refused to sanction an amendment acquired by apparent overreaching by the plaintiff.

■ ■ The contract in issue here is partly for the sale of chattels and partly an agreement not to compete. Under the statute, therefore, at least that part of the agreement which calls for the sale of the chattels would be enforceable without any consideration. But we do not believe that equity or logic would support a holding that enforcement of the agreement should be granted in part and denied in part. The public policy considerations that dictated the passage of section 2—206 (Ill. Rev. Stat. 1987, ch. 26, par. 2—206) are just as valid in other contracts as they are in contracts for the sale of goods. For example, many, if not most, construction contracts are not completed in compliance with the time requirements of the original agreement and the parties consistently amend the agreement. In such cases diffi-

culty, if not impossibility, of performance may be caused by a myriad of factors, *e.g.*, weather, strikes, illness, death, sudden shortages of materials, recessions and even war. Under such circumstances, the parties, acting in good faith, should be permitted to adjust their agreements without the necessity of new and different detriment and benefit. The Restatement of Contracts makes no distinction in the type of contract and recommends that a promise modifying a duty under a contract not fully performed on either side be binding if the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made or to the extent that justice requires enforcement in view of a material change of position in reliance on the promise. (Restatement (Second) of Contracts §89 (1981).) But, whether the statute should be extended to all contracts is not for this court to say, and we need not so decide, for we hold that, even absent the statute, the August Agreement is enforceable and is supported by consideration. Our holding, we believe, is supported by *Bishop v. Busse, Cooke v. Murphy* and *Commercial Car Line v. Anderson.* And it is not contrary to the holdings of any of the other cases cited. In this case, unlike any of the cases denying recovery, performance had not begun. There was nothing that could have been enforced by the defendant, again unlike any of the defendants in those cases.

One of the cases which denied recovery, and we discussed, was *Marcus v. S. S. Kresge Co.* (1936), 283 Ill. App. 556. We emphasized that the court there said that "where there is a complete rescission, and the relationship of the parties is terminated, leaving them entirely free from the earlier contract, a subsequent agreement would be good." (*Marcus*, 283 Ill. App. at 569.) The posture of the parties here at the time of the August Amendment was precisely the same as though there had been a rescission. The June Agreement provided it was contingent upon dismissal of a bankruptcy case before 11 a.m. on June 29, 1984, the following day. June 29 had passed without the dismissal of the bankruptcy action because of certain unforeseen difficulties. There was no obligation on the part of either party to proceed any further. The defendant could have waived that condition like any other condition precedent. The parties were, as the *Marcus* court said, "entirely free from the earlier contract." The amendment, therefore, is subject to the rule of *Cooke v. Murphy* that one promise is a sufficient consideration to support another, and where a person agrees to do any act beneficial to another, that forms a sufficient consideration to support an agreement.

The defendant argues at great length that the obligation imposed

upon the plaintiff under the August Amendment was no different than that imposed on him by the June Agreement and, therefore, could not constitute consideration. We must reject the defendant's argument for two reasons. First, as we have pointed out, at the time the August Amendment was made, the plaintiff was under no obligation to do anything with respect to the bankruptcy proceedings. He could not do anything; the time for performance had passed. Second, even assuming that the obligation of the June Agreement had no time limitation, the obligation imposed upon the plaintiff in the August Amendment was different than that imposed in the June Agreement. The June Agreement simply said that it was "contingent upon dismissal of" the bankruptcy case without specifying who was obligated to get the dismissal. Not all dismissals of bankruptcy cases come on the motion of the alleged bankrupt. The second agreement put certain obligations specifically on the plaintiff: "That agreement of June 28, 1984, is contingent upon attorneys for Greenberg executing and presenting to United States Bankruptcy Court in case no. 84 B 08081 an agreed application for relief from automatic stay and for authorization to sell collateral or dismiss case no. 84 B 08081."

We hold, therefore, that the defendant has failed to establish a lack of consideration of the August Agreement, as a matter of law and summary judgment should not have been entered in its favor. In view of our holding, it is unnecessary to discuss the additional argument of waiver advanced by the plaintiff.

It should be pointed out that the trial judge, presiding over a high-volume call, dealing with many complex issues, did not have cited to him a single case we have discussed, save *Board of Education v. Barracks*; nor were the pertinent provisions of the code or Restatement called to his attention.

The judgment of the circuit court of Cook County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HARTMAN, P.J., and SCARIANO, J., concur.