## Abraham Bernstein et al., Appellees, v. George Marinocus et al., Appellants.

### Gen. No. 25,243.

LANDLORD AND TENANT, § 64*—*what is effect of lease when previous agreement exists.* Where a lessor, after demising premises for a given period of time, grants, during the term of that lease, a second lease for a longer term, the latter lessee becomes an overlessee and is looked upon in the light of a grantee of the reversion and entitled to have the rents which accrue upon the first lease.

Appeal from the Circuit Court of Cook county; the Hon. GEORGE F. BARRETT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Reversed. Opinion filed July 7, 1920.

O'DONNELL & O'DONNELL, for appellants.

BLUM & BLUM, for appellees.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On June 1, 1916, the plaintiffs, Abraham Bernstein and Henry Wolf, caused judgment by confession to be entered in the circuit court, upon a written lease, against the defendants, George Marinocus and Peter A. Klomookas, in the sum of $540.75. On November 25, 1916, leave was given the defendants to plead to the plaintiffs' declaration and an order entered that the judgment theretofore rendered by confession should stand as security. The defendants pleaded (1) nonassumpsit, (2) release by deed, and (3) payment in full.

The evidence shows substantially the following: On March 20, 1909, one Charlotte A. Hutchinson executed a written lease to the defendants of a store and base-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ment at 458 Milwaukee avenue, to be occupied as a restaurant, from May 1, 1909, until April 30, 1912. The rent was $2,880, payable in monthly instalments of $80 each, in advance, upon the first day of each and every month. The lease contained, among other things, the following:

"It is understood that in the event of a sale of the building in which the above demised premises are situated, said party of the first part reserves the right to cancel this lease by giving said party of the second part 60 days' notice in writing.

"In consideration of this privilege of cancellation said party of the first part agrees to charge no rent for 60 days and in addition agrees to reimburse said party of the second part, for any moneys expended by them for permanent repairs during the term of this lease."

It is admitted that the rent pursuant to the terms of the lease was paid up to March 31, 1910. On March 7, 1910, Charlotte A. Hutchinson sold and conveyed the premises in question to the plaintiffs and on March 22, 1910, assigned to them the lease of March 20, 1909. On April 25, 1910, the plaintiffs leased the entire building, including that portion occupied by the defendants, to Jacob Muller and Peter Muller as lessees, for a period beginning May 1, 1910, and ending April 30, 1920. That lease contains the following:

"Tenth: It is further covenanted and agreed by the parties of the first part (the lessors) that the parties of the second part (the lessees) shall have the said demised premises free of any rent to July 1, 1910, but said parties of the second part agree to assume all responsibility of eviction if necessary, of the present lessees of said demised premises, but parties of the first part agree to serve as witnesses should their testimony be required."

On June 28, 1910, the plaintiffs notified the defendants in writing that Charlotte A. Hutchinson had conveyed to them, the plaintiffs, the premises in question,

458 Milwaukee avenue, and that the plaintiffs "have elected to cancel and determine said lease and your tenancy of said premises as they are empowered to do under said lease and hereby notify you that the said lease is cancelled and determined on the 31st day of August, A. D. 1910, at which time you are required to surrender possession of said premises to the undersigned."

On September 1, 1910, Jacob and Peter Muller notified the defendants in writing that they, Jacob and Peter Muller, "have a lease to the premises now occupied by you and known as" store and basement situated at 458 Milwaukee avenue and they demand immediate possession of said premises.

The plaintiff, Bernstein, testified that the defendants did not pay any rent for the months of April, May, June, July and August, 1910, during which time they occupied the premises; that he never authorized Jacob and Peter Muller to make any settlement of the claim of the plaintiffs' for their claim for rent against the defendants; that he tendered back to the defendants the rent which they had paid Charlotte Hutchinson for the month of March, 1910; that that was done pursuant to the notice which Mrs. Hutchinson served on them as of March 7, 1910, and which stated that they should have March and April to May 7 free of rent and which notified them that the property had been sold to the plaintiffs; that the defendants refused to accept it; that about 10 days later the defendants claimed that they were entitled—as a set-off—to be paid for a number of bills amounting to $250 for permanent improvements; that the Muller brothers paid rent to the plaintiffs for July, August and September, 1910, but that they gave them free rent for the months of May and June because they anticipated trouble in getting the defendants out.

The evidence of the witness Marinocus is to the effect that when the Muller brothers sent the defendants

notice to move out they made a settlement with them and received a written release dated September 21, 1910, which release recites that the Muller brothers released the defendants from any and all claims which the Muller brothers had against them for the use and occupation or rent of the premises and also released the Muller brothers from any claim which the defendants might have against them.

Marinocus testified further that the defendants had put in certain permanent repairs and made certain improvements which are as follows:

| | |
|---|---|
| July, 1909, painting and decorating store...... | $105.00 |
| April and May, 1909, lumber used for stairway and basement ........................... | 10.75 |
| July 15, construction of bulkheads in the show windows ............................... | 17.50 |
| February 16, 1910, putting in door at head of stairway ............................... | 24.50 |

February 15, 1909, wiring:—

| | | |
|---|---|---|
| Removal and rewiring one electric fan | $30.00) | |
| One electric bell and wire.......... | 5.50) | 38.20 |
| Two snap switches..............!.. | 1.20) | |
| Three sockets for incandescent lamps | 1.50) | |

| | |
|---|---|
| February 15, 1909, work of carpenters, putting up stairway \going into basement...... | 23.50 |
| July 10, 1909, two swinging doors in the kitchen | 25.00 |
| Catch basin in the basement................. | 35.00 |

Total .................................$279.45

On cross-examination he testified that the agreement with Mrs. Hutchinson was that if the defendants were permitted to remain in the premises 3 years she would not have to pay for the repairs and improvements, but if they were forced to move before 3 years then she had to return them the money that was expended for the improvements.

The witness Coorlas testified for the defendant that he was present at the time of a certain settlement between the Muller brothers and himself; that their at-

torneys were present and also Bernstein, one of the plaintiffs; that he made a settlement of his matter with the Muller brothers; that he, himself, had the next store to the plaintiffs' and got $200 cash from Muller brothers besides his rent; that on that occasion Bernstein said, apparently referred to his own matter, "he was glad to settle the thing so the thing was settled."

The plaintiff, Bernstein upon being recalled, referring to the settlement testified to by the witness Coorlas, said "I did not know there was a settlement."

The trial judge allowed the plaintiffs 3 months' rent at $80 a month and $100 interest, making a total of $340. From that he deducted $68.75, being for the following permanent improvements: Plumbing, $35, lumber $10.75, labor $23. He also allowed $27.50 for interest on the total amount of the permanent improvements. The final judgment was for $243.75, being $340 less a credit of $96.25. This appeal is from that judgment.

It is the contention of the defendants that when the plaintiffs made a lease of the premises to the Mullers that the defendants also became the tenants of the Mullers and gave the Mullers the sole right and title to call rents and profits to accrue or to become due from the defendants subsequent to May 7, 1910.

It is the law that where a lessor, after demising premises for a given period of time, grants, during the term of that lease, a second lease for a longer period of time, the lessee in the latter lease becomes an overlessee and is looked upon in the light of a grantee of the reversion, so much so in fact that he is entitled to the rents which accrue upon the first lease. *Cheatham v. J. W. Beck Co.*, 96 Ark. 230; 18 Amer. & Eng. Encyc. of Law (2nd Ed.) p. 283; *Pendergast v. Young*, 21 N. H. 234; sections 14, 15, ch. 80, Hurd's Rev. St. p. 1633 (J. & A. ¶¶ 7052, 7053). In 16 R. C. L. sec. 123, p. 638, the law is well stated as follows: "The lessor may convey to a third person

his reversion, by a concurrent lease under seal, and the lessee thereunder becomes the landlord of the first lessee, with the right to collect the rent and enforce the covenants of the first lease until the expiration of the term of one or the other of the two leases.'' It follows, therefore, that when on April 25, 1910, the plaintiffs leased the entire building, including that portion occupied by the defendants, to Jacob Muller and Peter Muller, as lessees, for a period beginning May 1, 1910, and ending April 30, 1920, the Mullers, as overlessees, became grantees of the reversion and entitled to the rents accruing on the defendants' lease.

Accordingly, the judgment of the trial court must be reversed.

*Reversed.*

MR. JUSTICES O'CONNOR and THOMSON concur.