(No. 26756.—

JOHN BECKER, Appellant, *vs.* ADOLPH MORSTADT *et al.*— (Adolph Morstadt, Appellee.)

*Opinion filed November 17, 1942—Rehearing denied Jan. 14, 1943.*

JOHN B. HARRIS, for appellant.

HARRY FAULKNER, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Madison county, denying specific performance of an alleged oral contract to convey land. The facts, including the existence of the contract, are, in the main, in sharp controversy.

Appellant and appellee are both immigrants from the same country in Europe. Appellee lives at Stallings, a small community in Madison county, where he runs a tavern. About 1931 appellant commenced commercial fishing in Horseshoe Lake, which is located in the southwest part of Madison county. In order to do this he found it neces-

sary to rent fishing rights on the lake from several owners. At that time he lived on the east bank of the lake. In the course of his business he became acquainted with appellee, who owned thirty-five acres on the north shore of the lake, all but five acres of which was submerged by the waters of the lake. On the west part of appellee's land, there were four clubhouses, which he rented to others by the season. During the summer of 1932 appellant and appellee discussed the possibility of appellant renting the thirty-five acre tract. The negotiations finally culminated in a written lease executed on October 10, 1932. The lease was for a term of three years at $10 per month. The last sentence specifically provided that any improvements placed on the land by appellant should, at the expiration of the lease, remain on the land and become the property of appellee. The lease also gave to appellant an option to purchase the land for $200 per acre, the option to be exercised during the term of the lease.

There is a controversy as to the execution of the lease. Appellant, who cannot read English, says that appellee, when he presented the lease to him, pretended to explain it to him in German; that he signed it immediately; that appellee did not call to his attention the clause relating to improvements. He claims that he was ignorant of the contents of the lease until sometime after he had started the erection of a home on the leased land; that appellee constantly encouraged him in the construction of improvements by assuring him that such improvements could be removed by him at the expiration of the lease; that when he attempted to sub-lease part of the property to one Paul Schmeeder, he learned for the first time that the clause was in the written lease prohibiting the removal of improvements from the leased premises; that he and Schmeeder then requested appellee to change it; that appellee refused, but assured him that it made no difference and that appellant

would be allowed to remove his improvements if he decided not to exercise the option to purchase.

Appellee testified that appellant took the lease home with him and kept it a month before signing it. He denied that he ever made any representations as to the contents of the lease to appellant. According to his version the conversation with Schmeeder took place before the lease was signed, and he, at the time, refused to make the changes suggested by Schmeeder. Appellee further testified that shortly before the lease expired appellant requested an extension of the term, which he refused, and told him to get his money together and buy the land.

It is undisputed that during the term of the lease appellant constructed a five-room house on the property and also another cabin, which he rented for $100 per year; that he otherwise improved the property by filling in some large "sink holes," levelling it off, building a pond for live fish, etc. After the lease expired, appellant continued to occupy the premises as a tenant from month to month, and paid to appellee rent at the rate of $10 per month, which was the same rental he paid under the written lease.

Appellant claims that at the time his tenancy was extended there was also an oral agreement that appellant should continue to have the option to purchase the land at $200 per acre, to be paid, $2000 cash and the balance to be evidenced by a note, secured by a mortgage on the land. He claims that appellee at that time further agreed that if appellant did not purchase the land under the option, all improvements placed on the land by him could be removed at the end of his tenancy. Appellee positively denied that any such agreement was made. Shortly thereafter appellee sold ten acres of the land to a third party. Apparently appellant made no objection to this sale. Appellant later constructed a large chicken house and run. This state of affairs continued with appellant in possession

and constantly improving the property until the spring of 1938, when appellant got behind in his rent. Appellee served a five-day notice on appellant, and the latter paid the constable the rent he owed. Appellee thereupon terminated the lease by a thirty-day notice, and brought an action in forcible detainer against appellant for possession. When this was done, appellant attempted to exercise the purported option to purchase. He arranged to borrow $2000 for the down payment. Appellee refused to accept the offer and denied the existence of any option agreement.

Appellant's amended complaint alleges a fiduciary relationship, in which appellee prevailed upon him under the guise of friendship and by false representations, to spend $5000 in improving the property. Appellant sought, by this suit, the specific performance of the alleged option. He also asked for a decree enjoining the sheriff from ousting him from possession of the premises under the writ of restitution awarded by the judgment of the county court in the forcible detainer suit.

The cause was referred to a master to take the evidence and report his finding and conclusions. The master made findings in favor of appellant and recommended a decree as prayed. Exceptions to the master's report were sustained by the chancellor. A decree was entered sustaining the exceptions to the report and denying specific performance of the option, and denying an injunction against the sheriff. The decree permitted appellant to remove all improvements placed on the land by him subsequent to the term of the written lease, but denied the right of appellant to remove the house erected during the term of the original written lease. The chancellor filed a memorandum opinion, in which he set out his reasons for his holdings. He was of the opinion that the law did not permit any change in the terms of the written lease by the alleged subsequent oral agreement concerning the removal of improvements and held that the oral agreement could only apply to im-

provements constructed after the expiration of the written lease.

From the foregoing statement, it is obvious that it must first be determined what agreements existed between the parties before we can determine whether appellant is entitled to relief. Originally there was a written lease executed by the parties. This lease was under seal. As a general rule, an executory contract under seal cannot be altered, changed or modified by parol. (*Wagner* v. *McClay,* 306 Ill. 560; *Yockey* v. *Marion,* 269 id. 342; *Alschuler* v. *Schiff,* 164 id. 298; *Loach* v. *Farnum,* 90 id. 368; *Chapman* v. *McGrew,* 20 id. 101). It is also the rule that while a parol contract which adds to, or modifies, the terms of an executory written contract under seal must be held nugatory, nevertheless the parties to the contract may, by parol agreement, waive the performance of certain covenants contained in the contract, and when that is done, such provisions are abrogated. (*Becker* v. *Becker,* 250 Ill. 117, 125; *Chicago and Eastern Illinois Railroad Co.,* v. *Moran,* 187 id. 316; *Moses* v. *Loomis,* 156 id. 392; *Wheeler* v. *Frankenthal & Bro.* 78 id. 124; *Cooke* v. *Murphy,* 70 id. 96; *White* v. *Walker,* 31 id. 422; *Swanzey* v. *Moore,* 22 id. 63). This rule is based on the doctrine of equitable estoppel. It is applied where one of the parties to the contract has been induced by the parol agreement to adopt a line of conduct which is prejudicial to his interest if strict performance of the written covenant is insisted upon. For this reason it is not necessary that there be a new consideration to support the parol agreement whereby the performance of the written covenant is waived. *Worrell* v. *Forsyth,* 141 Ill. 22, 30.

Applying these rules to the case at bar, it is clear that the original written contract cannot be modified by the subsequent oral agreement, if such agreement was made. On the other hand, if appellee represented to appellant that he would waive the strict performance of any of the cove-

nants contained in the written agreement, and appellant acted upon such representations to his detriment, then appellee must be held to have waived the performance of such covenants. The evidence shows that this is exactly what was done in this case—appellee, both by his words and his conduct, waived the provision in the written lease that improvements made by appellant should not be removed from the premises at the end of the term. His conduct was sufficient to induce appellant to believe that this provision of the lease would not be insisted upon. By the subsequent oral agreement appellee induced appellant to make further improvements on the land, believing that he had the right to remove any and all buildings which he might erect. By his conduct he encouraged appellant to construct other improvements. This constituted a waiver of any right appellee had to retain the buildings and improvements constructed by appellant. We are of the opinion that appellant had the right, by virtue of the proven parol waiver of the covenant against removal, to take down and remove all buildings and other improvements made by him on the leased premises, including those erected and made during the term of the original written lease.

It is equally clear that the appellant is not entitled to specific performance of the option to purchase. It is not controverted that the original option to purchase, contained in the written lease, was never exercised. Appellant argues that appellee gave him a new, oral option, after the expiration of the written lease. Assuming this to be true, appellant has shown no consideration for such an option, and it is, therefore, at its best, a mere offer to sell, revocable at any time before acceptance. (*Threlkeld* v. *Inglett,* 289 Ill. 90.) If we assume a valid and binding option, it was only coextensive with the term of the lease. There is no dispute but what that term has expired. After the expiration of the term of the written lease, appellant was a tenant from month to month. He admits that he made

no attempt to exercise the option until he was served with notice of the expiration of his tenancy. This did not constitute a valid acceptance of the alleged option before it was revoked or withdrawn. The trial court correctly denied specific performance.

The decree of the circuit court insofar as it refused to allow appellant to remove the buildings and other improvements erected by him on the leased premises, during the term of the original written lease, was in error. The decree is reversed and the cause is remanded to the circuit court with directions to enter a decree allowing appellant to remove all buildings and other improvements erected or constructed by him on the leased premises, which can be removed without permanent injury to the land, and giving him a reasonable time in which to remove the same, and denying all other relief prayed for in the complaint.

*Reversed and remanded, with directions.*