M. A. Lipschultz et al., Trading as 745 West Van Buren Street Building, Appellants, v. R. I. Robertson et al., Trading as Precision Electric Company, Appellees.

Gen. No. 45,049.

Heard in the first division of this court for the first district at the February term, 1950. Opinion filed June 5, 1950. Rehearing denied June 26, 1950. Released for publication June 26, 1950.

JACK EDWARD DWORK, of Chicago, for appellants; HARRY G. FINS, of Chicago, of counsel.

JEROME JOHNSON and ERWIN M. PEARL, both of Chicago, for appellees; ERWIN M. PEARL, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiffs secured a judgment by confession in the sum of $720 against defendants, upon a lease dated October 11, 1946. Upon petition of defendants the judgment was vacated and defendants were allowed to defend. Plaintiffs filed an amended statement of claim, seeking to recover in addition to the amount of the original judgment the sum of $200 for certain electric drop cords, one window of the value of $100, and a necessary expenditure of $50, making a total claim of $1,070. Defendants filed an answer denying the claims made. Upon a trial of the issues by the court without a jury, a judgment in favor of defendants was entered, from which plaintiffs appeal.

The case was tried upon a stipulation of facts, which discloses the following: that the premises in question were in a commercial building, the lease from plaintiffs to defendants covering the second floor, for a term from November 1, 1946, to October 31, 1951;

that there was a deposit for two months' rent, provided for in defendants' lease, which was to be applied to the last two months of the term; that the lease contained the following clause: "In the event of sale of the building, new purchaser may cancel this lease by giving sixty (60) days' notice in writing to the lessee"; that the City of Chicago acquired title to the building by warranty deed from plaintiffs. The date of the deed is not stated in the stipulation, but it does appear from the record to be September 30, 1948. On October 27, 1948, the City of Chicago executed a lease to the plaintiffs of the entire building in question, for a term from November 1, 1948, to April 30, 1949, and another lease dated April 1, 1949, for a term commencing May 1, 1949, to October 31, 1949. These leases from the City provided that the lessees would have the privilege of subletting said premises, and that either party could terminate said lease on the last day of any calendar month, during the term thereof, by giving to the other not less than 30 days' prior written notice of intention so to terminate. The rent reserved in each of said leases was $6,000, payable in six equal monthly instalments. On October 25, 1948, a letter from the Commissioner of Subways and Superhighways of the City was sent to the defendants and reads as follows:

"Our program of construction of the Northwest Route in which the property you now occupy at the above address is located, will require the removal of all buildings in this area early in 1949.

"We are advising you of our plans now in order that you will have additional time to relocate before formal demand is made for the building.

"We are rapidly acquiring property in this area and each month shows an increase in the number of firms

who are looking for new locations. For this reason, we think it will be to your advantage to relocate as soon as possible.''

No action was taken by the defendants upon receipt of this letter until March 31, 1949, when they wrote a letter of that date to the Department of Subways and Superhighways, reading as follows:

''Pursuant to your letter of October 25, 1948, setting forth that the removal of all buildings in this area are to take place early in 1949, we have relocated and hereby notify you that the premises occupied by Precision Electric Company will be vacated on or before May 1, 1949.

''We would appreciate your acknowledging receipt of this notice confirming these understandings.''

On April 2, 1949, plaintiffs, through their attorney, sent the following letter to the defendants:

''Your registered special delivery letter dated March 31, 1949, sent to the 745 W. Van Buren Street Building and the Department of Subways and Superhighways has been forwarded to us. Obviously, it is your desire and intention to breach your lease on the pretext that the letter to you from the Department of Subways and Superhighways dated October 25th, 1948, was a notice to move.

''You are hereby notified that such letter was not such a notice; that the Department of Subways and Superhighways have no right, power, or authority to give you any notice to move; that your lease is not with them; that no notice whatever has been given to you by your lessor, and that the letter sent by the Department of Subways and Superhighways was merely a form letter and was not intended by that Department to constitute any notice of cancellation

of lease, even if it had authority to do so, which it did not have.

"You are further notified that you will be held to a strict compliance of your lease on the above described premises."

Defendants had not to the date of this letter of April 2nd received any confirmation from the Department of Subways and Superhighways, as requested in their letter of March 31 to the Department. On April 4, 1949, the Commissioner of the City wrote to defendants, as follows:

"This is to acknowledge receipt of your letter of March 31 in which you advise us of your intention to vacate the building at the above address as of May 1, 1949.

"Please forward the keys to our agent, George Lurie and Co., 120 S. LaSalle Street, when you have completed moving. Please notify this office a week in advance of your final date of moving so that we can place a watch service on the building."

On April 13, 1949, plaintiffs again wrote to defendants, as follows:

"I have been advised today by the Department of Subways and Superhighways of the City of Chicago that in answering your letter to them of March 31st, 1949, they assumed that you were a direct lessee of theirs as is true in hundreds of buildings which they have taken over. They subsequently find, however, that you have never been a lessee of theirs and that they have no jurisdiction whatever to deal with you in connection with your tenancy of the 745 W. Van Buren Street Building.

"I again notify you that if you vacate the premises, you do so at your own risk. You have not at any

225

time been requested to vacate by your lessor and I state again as I did in my letter to you of April 2nd, 1949, that you will be held in strict compliance with your lease. You may govern yourself accordingly.''

On May 2, 1949, defendants wrote to plaintiffs, as follows:

''I have this day delivered to your office and given to Mr. Segal the keys for the premises occupied by Precision Electric Company. This is in keeping with the instructions received by Mr. McKenny of the Department of Subways and Superhighways of the City of Chicago.

''I exceedingly regret that you were not there in person, as there were a number of things I wanted to discuss with you.

''Please acknowledge receipt of the keys.''

In reply to that letter plaintiffs wrote to defendants on May 4, 1949, as follows:

''Your letter of May 2nd, 1949, addressed to Mr. Lipschultz of the 745 Van Buren Building, has been turned over to me, and your continued pretense of having broken your lease and vacated the premises on the strength of your correspondence with the Department of Subways and Superhighways, is amusing. I personally wrote you on April 2nd, 1949, and again on April 13th, and you have at all times been in possession of all of the true facts.

''Unless my client receives a check for rent for April and May of this year, by return mail, I shall proceed with legal action to enforce collection of the same.''

The stipulation further disclosed that at the time of the trial the City had not taken possession of the building, and all of the remaining tenants of the building were still present; that new tenants had moved

into the building—one as late as August 1, 1949, and another September 1, 1949.

The only question, shown by the record, presented to the trial court and argued here by both parties, is whether the City by its notice of October 25, 1948, legally cancelled the lease in accordance with the provision of said lease.

Defendants insist here, as they did below, that the notice from the City under date of October 25, 1948, was a cancellation notice of the lease theretofore existing between defendants and plaintiffs, and that they acted upon this notice and vacated the premises on May 1st. This suit is for rent for April and May 1949.

It must be recognized at the outset that the original lease between plaintiffs and defendants gave the purchaser (in this case the City of Chicago) the right to cancel the lease upon 60 days' notice, and the City and defendants, if it did not affect substantial rights of others, could agree upon any form of notice, for 60 days or less, or waive it. Where, however, the rights of plaintiffs, arising from the lease executed by the City to plaintiffs for the entire building, were vitally affected, and defendants had knowledge of them, as shall presently be pointed out, a different question is presented. The only right the City had to cancel was by virtue of the original lease between plaintiffs and defendants.

 No question was presented or argued in the court below, nor is it presented here, as to whether the City or the plaintiffs were entitled to the rents during the period in question. The trial court decided the only issue presented—namely, the sufficiency of the notice and the consequent termination of liability of defendants for rent. Neither side argued, either in the lower court or upon appeal here, to what extent the reversionary interest of the City was affected by the lease given to plaintiffs for a shorter period

than defendants' lease. We feel any discussion of that question is unnecessary and has no place in the determination of the single issue. While the stipulation of facts is not as complete as could be desired, yet we are bound to consider the reasonable inferences to be drawn from all the facts and circumstances presented by this record. The important fact to be determined is what knowledge defendants had, before acting upon the alleged notice from the City, that plaintiffs had a lease from the City for the entire building, and that plaintiffs were entitled to collect the rents. To determine this fact, all the reasonable inferences from the stipulated facts must also be taken into consideration. Surely, if the City had given plaintiffs a formal assignment of the rents under the lease to defendants, and defendants had knowledge thereof, no one could question the right of plaintiffs to collect such rents, unless defendants' lease was legally cancelled by the City. The lease the City gave to plaintiffs of the entire building was tantamount to such an assignment. What else could the City have intended by its lease to plaintiffs, except that plaintiffs should have the rents of the entire building? The City has at no time questioned plaintiffs' right to collect the rents.

Upon the question of defendants' knowledge of plaintiffs' rights, we make the following observations from the record, in addition to the stipulated facts.

No claim is made for rent for November and December 1948, and January, February and March 1949. The plaintiffs, during all this time, were under obligation to pay rent to the City under the lease they obtained, dated October 27, 1948, just two days after the City had given the alleged notice. To whom did the defendants pay the rent during these months? The City has at no time made any claim for it. Neither in the petition filed by defendants to vacate the orig-

inal judgment by confession in the instant case nor in the answer to the amended complaint of plaintiffs is there the slightest suggestion by these defendants that they did not know of the rights of plaintiffs, as lessors, and that plaintiffs had obtained a lease from the City. Nor is there any suggestion that for these months referred to they paid any rent to the City. Certainly the City, after giving a lease of the entire building to plaintiffs, would not collect the rents from these defendants. To do so would be bad faith on its part, which should not be imputed to the City. If these plaintiffs had not collected the rent from these defendants for these months, it would be most reasonable to assume that this suit would have been for the rent covering those months and not limited merely to April and May. The City knew of plaintiffs' rights, and the defendants are deemed to have had knowledge of plaintiffs' rights, as lessors, and without question so recognized them by paying rent for the months referred to. Under these circumstances it was necessary that the City, if it wanted to terminate the original lease between plaintiffs and defendants, should have given a notice that could be considered a notice of cancellation and thereby make it binding upon plaintiffs as well as defendants. The notice of October 25, 1948, lacks every element of an effective notice of cancellation.

As aptly stated by this court (Second Division) in *Goldblatt v. Perlman,* 338 Ill. App. 654 (Abst.), in construing a notice of termination:

"In essence the prescribed notice must contain a termination of the lease . . . and make a demand for possession by a certain time. The notice served by plaintiff in the case at bar did not satisfy these requirements. There was a complete omission of any words declaring a definite termination of the lease, or demanding possession."

 True, the notice discussed in the case cited was in connection with the statutory requirement for notice to quit, yet in principle there can be no distinction when we consider that the City had no right to cancel, except by the notice required by the lease, when the rights of plaintiffs would be vitally affected by such a termination. The notice of the City in the instant case was a mere warning. It made no demand for possession. It fixed no specific time for termination and could hardly be considered a notice of cancellation. Had the City given the proper notice of cancellation, these plaintiffs would not have been entitled to complain. In the absence of such a notice, plaintiffs' rights, as lessors, must be respected. Defendants had definite warnings from plaintiffs, as revealed by the correspondence, as to the rights of plaintiffs. Defendants had ample opportunity to obtain a definite notice of cancellation from the City, if that is what the City intended. They chose at their own risk, in the face of the warnings from plaintiffs, to speculate upon the legal sufficiency of the notice given by the City.

Since we hold that the notice in question was ineffective, the plaintiffs were entitled to a judgment for rent for the months of April and May, including attorneys' fees, as provided in the original judgment. The record discloses that plaintiffs waived the other items claimed in the amended statement of claim.

Accordingly, the judgment of the municipal court is reversed and judgment entered here for plaintiffs for $720.

*Judgment reversed and judgment here.*

Tuohy, P. J., concurs.

Niemeyer, J., dissents. Plaintiffs are attempting to recover rent for April and May 1949, under a lease from plaintiffs to defendants for a term expiring October 31, 1951, unless sooner terminated by the purchaser in the event of a sale of the premises. Defend-

ants surrendered possession April 30, 1949. The trial court credited the balance of $312.50, on deposit under the lease, in full payment of the April rent. The court held that the lease was terminated by the City of Chicago, purchaser of the property, and the defendants, and denied plaintiff's claim to the May rent. The right of the parties must be determined by the evidence. The sole contention of plaintiffs on the trial was the insufficiency of a letter from the City October 25, 1948 as notice of cancellation. No question was raised as to the right of the City to cancel.

September 30, 1948, plaintiffs conveyed the property to the City of Chicago by regular warranty deed. This deed conveyed the lease and the right to receive unaccrued rentals. *People ex rel. Hargrave v. Phillips,* 394 Ill. 119, 123. The City became lessor and all rights of plaintiffs under the lease and to future rentals were terminated. The provision of the lease for 60 days' notice in writing of cancellation of the lease by the purchaser of the property, was for the sole benefit of lessees and could be waived by them. *Neil v. Kennedy,* 319 Ill. 75, 80; *Seaver v. Thompson,* 189 Ill. 158; *Wolf v. Ladd,* 220 Ill. App. 312; *Fuchs v. Peterson,* 232 Ill. App. 287; 32 Am. Jur., Landlord and Tenant, sec. 837. Waiver of the notice is not a modification or change in the terms of the original lease. *Becker v. Becker,* 250 Ill. 117; *Neil v. Kennedy, supra; Welsh v. Jakstas,* 401 Ill. 288, 299. It is elementary law, requiring no citation of authority, that prior rights are superior to rights subsequently acquired with notice. Plaintiffs as original lessors in defendants' lease had actual notice of defendants' rights under the lease. Defendants being in possession, plaintiffs had constructive notice of defendants' rights. When plaintiffs procured their short-term lease from the City on October 27, 1948 and April 1, 1949, they took the leases with actual and constructive notice of defendants'

231

right to waive the 60 days' notice in writing and surrender the premises in cancellation of their lease in compliance with the suggestion of the City, hereafter referred to. Whatever rights plaintiffs acquired under the leases from the City were subject and subordinate to the right of the defendants to waive notice. On October 25, 1948, the City advised defendants in writing to relocate as soon as possible because the City's program of construction would require removal of the building early in 1949. This was an informal notice of cancellation of the lease as soon as defendant relocated, and was accepted and acted upon by defendants. The first lease from the City to plaintiffs was executed two days after this letter. Whatever rights, if any, to future rents from defendants were acquired by plaintiffs under this lease, are immaterial, because the deposit under defendants' lease was applied to the payment of the April rent without objection by either party. April was the last month covered by the first lease to plaintiffs.

On March 31, 1949, defendants replied to the October 25th letter from the City, stating that they had relocated and would vacate the premises on or before May 1, 1949. This meant that defendants had acted on the advice of the City and had secured and obligated themselves for other quarters commencing May 1, 1949. The City was then estopped to deny the defendants' right to surrender the premises. *Becker v. Morstadt,* 381 Ill. 422, 427; *Moses v. Loomis,* 156 Ill. 392, 396; *Doerr v. Maher,* 337 Ill. App. 245. It did not attempt to do so. April 4, 1949, the City acknowledged defendants' letter, accepted the offer to surrender possession and gave directions as to the delivery of the keys. By the letter of March 31st defendants' lease was effectively canceled as of April 30, 1949, when defendants were to, and did, vacate the premises. On March 31st, plaintiffs had no rights

232

to the premises or rentals beyond April 30th, and claimed none. It was not until the next day, April 1st, that plaintiffs secured the second lease, for a period from May 1st to October 31, 1949. Having actual and constructive notice of the City's right to cancel and defendants' right to waive the 60 days' notice, it was plaintiffs' duty, before executing and accepting the second lease from the City, to ascertain by inquiry of the City and of defendants, if by no other means, what, if anything, had been done toward cancellation of the lease. No inquiry was made. That plaintiffs obtained no rights superior to those of the City is conclusively established by *Seaver v. Thompson, supra.* In that case Netcher, the owner of a four-story building, rented the store floor and basement to Thompson for one year, expiring April 30, 1899; the lease contained a provision that if the lessor "shall, during the months of March and April, 1899, decide, by notice given to said second party in writing," not to commence to rebuild, then the lessee may elect, by written notice to lessor in March or April 1899, to renew the lease for an additional year, ending April 30, 1900; Netcher did not give written notice to Thompson of his decision not to commence building; on April 17, 1899 he gave a lease to Seaver for one year, beginning May 1, 1899; April 21, 1899 Thompson gave notice in writing of his election to renew the lease and refused to surrender possession; Seaver brought a forcible detainer action before a justice of the peace; on appeal to the circuit court judgment was entered in favor of Seaver; the Appellate Court reversed this judgment and the Supreme Court affirmed the action of the Appellate Court. The Supreme Court said (p. 163):

"The provision in this clause of the lease . . . was for the benefit of the lessee, in order he might have the requisite information to enable him to exercise

233

the option secured to him by the contract between them,"

and that (p. 164):

"It was competent for the lessee to waive this character of notice and to act on knowledge otherwise obtained of the existence of the fact to which he was entitled to be informed in writing. The fact upon which rested his right to exercise the option existed; he elected to exercise the option and complied with all that was required of him to be done in order to make the option effective as between him and the lessor, Netcher. *The appellant, Seaver, did not by his lease obtain any rights superior to those of his lessor.*" (Emphasis added.)

Seaver, the second lessee, was bound by the waiver of notice by the first lessee. So plaintiffs, as second lessees, are bound by the waiver of notice by defendants, the first lessees.

It is significant that no reference is made to the leases from the City to plaintiffs in any of the correspondence in evidence. On July 8, 1949, pursuant to an order of court, plaintiffs filed a sworn list of documents but did not list the leases. The only reference to them in the trial court is their introduction in evidence by consent. The record shows no claim under them. These leases were ineffective as to the portion of the premises occupied by defendants. The plaintiffs as original lessors, and the City as successor lessor, were divested of possession of the portion of the premises demised to defendants. *Miller v. Gordon,* 296 Ill. 346, 350. The landlord's interest during the lease is called a reversion. 32 Am. Jur., Landlord and Tenant, sec. 76. This is defined by Blackstone (2 Com. 175) to be "the residue of an estate left in the grantor, to commence in possession after the termination of some particular estate grant-

ed out by him." *Keogh v. Peck,* 316 Ill. 318, 325, 326; *Brown v. Brown,* 247 Ill. 528, 534. Right to possession during the term of a lease is not part of the landowner's reversion. It is the less, or particular, estate which the owner as lessor has granted out of his fee or interest in the land. *Carter v. Lewis,* 364 Ill. 434, 441. When the short-term leases to plaintiffs were executed the City of Chicago had no right of possession of the premises occupied by defendants prior to November 1, 1951 to demise. Plaintiffs knew this.

The majority opinion, however, holds that the leases to plaintiffs were tantamount to a formal assignment of rents under the lease to defendants. No authority or precedent is cited to support this statement. Diligent search by the writer of this dissent fails to disclose any. If the lessor makes an unqualified grant of the land, the rent passes to the grantee as an incident of the reversion. *Crosby v. Loop,* 13 Ill. 625; *People ex rel. Hargrave v. Phillips,* 394 Ill. 119. Similarly, it is held that where the owner has leased premises for a definite period and during the pendency of the lease executes a second lease, to commence *in praesenti* and extending beyond the first lease, the second lessee is a grantee of the reversion—a portion of the lessor's estate after the termination of the first lease—and, as such grantee of the reversion, is entitled to the rents accruing under the first lease. *Bernstein v. Marinocus,* 218 Ill. App. 461; 32 Am. Jur., Landlord and Tenant, sec. 446; 52 C. J. S., Landlord and Tenant, sec. 517. In England, "where the second lease does not extend beyond the term of the first lease, it would be wholly void as regards the premises held under the first lease." 32 Am. Jur., Landlord and Tenant, sec. 93, p. 102, citing 15 Eng. Rul. Cas. 359—Ex. Ch. Research has disclosed no Illinois or American cases in point. On reason the English

235

rule is well founded. A second lease, expiring concurrently with or prior to the first lease, cannot be distinguished from a second warranty deed to the same premises. Each purports to demise or convey that which the lessor or grantor has parted with. Neither can convey anything affecting the rights of the first lessee or grantee. The leases from the City to plaintiffs are the usual printed industrial leases, demising the entire building without any reference to existing leases on a portion of the building. The execution of these leases was a denial, not a recognition, of defendants' lease. They cannot be construed as an assignment of any right under defendants' lease.

The right to cancel defendants' lease and the manner of doing it was a matter solely between the City as purchaser and successor lessor, and the defendants as lessees. The trial court said: "It seems to me that when we look at the sum total of what was said and done by the parties, the intent of the parties is clear, and . . . it was the intent of the city, in conformance with section 12 of that lease between the plaintiffs and defendants, to terminate this tenancy, and I think they did terminate it." The evidence supports the court's conclusion.